UNITED STATES of America, Petitioner,

v.

Honorable Henry F. WERKER, United States District Judge, Respondent.

UNITED STATES of America, Plaintiff,

v.

Harry SANTOS–FIGUEROA et al., Defendants.

No. 1110, Docket 76–3024.

United States Court of Appeals, Second Circuit.

Argued April 28, 1976.
Decided May 11, 1976.

Henry F. Werker, pro se.

Robert B. Fiske, Jr., U.S. Atty., S.D.N.Y., New York City (Ira H. Block and Howard W. Goldstein, Asst. U.S. Attys., New York City, on the brief), for petitioner, United States of America.

David V. Keegan, Garden City, N.Y. (McCoyd & Keegan, Garden City, N.Y., on the brief), for respondent, Harry Santos-Figueroa.

Gustave Weiss, New York City, for respondent Gregory Johnson.

Before LUMBARD, WATERMAN and MESKILL, Circuit Judges.

LUMBARD, Circuit Judge:

The government petitions for a writ of mandamus, 28 U.S.C. § 1651, ordering the Honorable Henry F. Werker, United States District Judge for the Southern District of New York, to refrain from communicating to any defendant in the pending case of *United States v. Santos-Figueroa, et al.*, prior to the entry of a plea of guilty, the sentence to be imposed upon that defendant if such a plea is subsequently submitted.

The petition raises significant questions of the proper exercise of judicial power and the administration of criminal justice in the federal courts that would evade review if not considered at this time.[1] We therefore consider mandamus to be an appropriate method, of review. *United States v. Dooling*, 406 F.2d 192 (2d Cir.), cert. denied sub. nom. *Persico v. United States*, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969); *International Business Machines Corp. v. Edelstein*, 526 F.2d 37, 40 (2d Cir. 1975). While we have no doubt that Judge Werker's proposed procedure was motivated in good faith by concern for the judicious and expeditious resolution of criminal cases, we agree with the government that the promise by a judge of a specific sentence for a subsequent plea of guilty falls within the explicit proscriptions of Rule 11(e) of the recently amended Federal Rules of Criminal Procedure. In addition, in the exercise of our supervisory power, we are of the view that such judicial intervention is inconsistent with the proper administration of criminal justice. We therefore grant the petition as requested.

On February 26, 1976, a grand jury in the Southern District returned a two-count indictment charging Harry Santos-Figueroa, Victor Holmes, and Vincent Hicks[2] with attempted armed robbery in violation of 18 U.S.C. §§ 2, 2113(a), (d). According to the government, the testimony would show that Santos-Figueroa and Hicks entered the branch of the Bankers Trust Company at 1770 Madison Avenue on February 17, 1976. In the course of the attempted robbery, Santos-Figueroa allegedly struggled with a bank guard and shot him in the chest while Hicks disarmed another bank guard. The three defendants then fled in a rented automobile driven by Holmes which was speedily pursued by officers of the New York City Police Department. After a brief chase, the defendants' car was involved in a crash, and Santos-Figueroa was apprehended immediately thereafter. An automatic pistol was found in his possession. Holmes and Hicks escaped after the crash. All of the above is merely a recital of what the United States Attorney expects to prove at trial. Holmes was arrested later on the evening of the attempted robbery and Hicks was arrested on March 8 on a charge of committing another armed bank robbery.

Santos-Figueroa and Holmes entered pleas of not guilty at their arraignment on March 1, 1976. Thereafter, pursuant to Fed.R.Crim.P. 11(e), defense counsel for Santos-Figueroa attempted unsuccessfully to obtain from the Assistant United States Attorney in charge of the case an agreement on a recommendation for a maximum ten year sentence instead of the 25 year maximum possible under § 2113(d).[3] In accordance with the longstanding policy of the Southern District, the Assistant United States Attorney refused to discuss any possible recommendation regarding sentence in return for a plea of guilty, which practice is generally recognized as plea bargaining.[4] The United States Attorney maintains that in light of the gravity of the offense charged and Santos-Figueroa's major role in the offense, this case would be most

---

1. If the defendant accepts the guilty plea, the government will have no right of appeal. Nor will the government be able to seek review of the proposed procedure if the defendant rejects the plea and proceeds to trial.

2. Hicks was originally named in the indictment as Gregory Johnson, a/k/a "Slick."

3. The 1975 amendments to Rule 11 were intended, in part, "to give recognition to the propriety of plea discussions," Advisory Committee Notes, 62 F.R.D. at 277, and to provide a means of implementing "an essential component to the administration of justice . . . (for) prompt and largely final disposition of most criminal cases," *Santobello v. New York*, 404 U.S. 257, 260–61, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 432 (1971). The Rule was not, however, designed to require the United States Attorney to engage in plea bargaining or to require a judge to pass on any agreement reached by the government and defendant. In fact, the practice of the United States Attorney's Office varies from district to district and the judicial practice varies from judge to judge.

4. The government offered to accept a plea to the second count of the indictment, see Fed.R.Crim.P. 11(e)(1)(A), but refused to bargain with respect to the sentence to be imposed under that count.

inappropriate for deviation from that policy.

At a pretrial conference on March 31, 1976, counsel for Santos-Figueroa informed Judge Werker of the government's refusal to agree to recommend ten years as a maximum sentence and requested him to indicate that no greater sentence would be imposed following a guilty plea. Judge Werker then requested, and later obtained, the defendant's permission to inspect a pre-sentence report pursuant to Fed.R.Crim.P. 32(c)(1).[5] The judge further indicated that at a later pretrial conference, scheduled for April 22, he would inform Santos-Figueroa of the sentence to be imposed if he were to plead guilty. The government expressed its opposition to this procedure.

After a conference with Judge Werker at which it was agreed that the proposed procedure raised important issues that should be promptly reviewed by this court, the United States Attorney filed this petition for mandamus on April 20th. The pretrial conference at which Judge Werker was to reveal the sentence he would impose has been postponed pending this court's decision.

Judge Werker has submitted an affidavit in support of his procedure. On April 28 we heard oral argument by the United States Attorney and counsel for Santos-Figueroa.

■ The amendments to Rule 11, Fed.R. Crim.P., which became effective on December 1, 1975, were designed to clarify and regulate the procedure for discussions and agreements regarding pleas of guilty. Rule 11(e)(1) states categorically: "(t)he court shall not participate in any such discussions." The commentaries regarding this injunction, and consideration of its intendment, leave no room for doubt that its purpose and meaning are that the sentencing judge should take no part whatever in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty or conviction, or submission to him of a plea agreement. See ABA Standards Relating to Pleas of Guilty § 3.3(a), Commentary at 72–74 (1968) which were the model for the 1975 amendments to Rule 11. See also Advisory Committee Notes to Federal Rules of Civil Procedure, 62 F.R.D. at 283–84; President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 13 (1967); id., The Challenge of Crime in a Free Society 136 (1967); Informal Opinion No. 779 ABA Professional Ethics Committee, 51 A.B.A.J. 444 (1965).[6] Those who support a pre-plea revelation of a sentence argue, however, that this disclosure does not constitute "discussion," but merely provides the government and defense counsel with additional data that they may properly use to reach an authorized plea agreement. We believe that the circumstances in which the judge would elicit the information necessary to formulate a pre-plea sentence and the consequences of the offer of that sentence would create the very dangers that the proscription in Rule 11 was intended to avoid. We therefore conclude that Rule 11 prohibits the practices proposed in this case.

The primary concern of those who would dissociate the judge from the plea bargain-

---

**5.** Rule 32(c)(1) provides in pertinent part:

"The (presentence) report shall not be submitted to the court or its contends disclosed to anyone unless the defendant has pleaded guilty or nolo contendere or has been found guilty, except that a judge may, with the written consent of the defendant, inspect a presentence report at any time."

Presentence reports may be prepared prior to a plea or verdict of guilt. See *Gregg v. United States*, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969). Prior to the 1975 enactment of Rule 32(c)(1) the judge could not see the report prior to acceptance of the guilty plea. Judge Werker asserts that the new Rule permits him

to follow his proposed procedure. The Advisory Committee Notes to Rule 11, however, make it clear that the sole purpose for a judge, with the defendant's consent, to inspect a presentence report is to determine the acceptability of a plea agreement previously arranged between the government and the defense. See 62 F.R.D. at 285, and also the Advisory Committee Note regarding Rule 32(c)(1) at 62 F.R.D. 322–23.

**6.** But see Enker, Perspectives on Plea Bargaining in President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 108, 117–18 (1967); Note, Restructuring the Plea Bargain, 82 Yale L.J. 286 (1972).

ing process has been that judicial intervention may coerce the defendant into an involuntary plea that he would not otherwise enter. See, e.g., *Brown v. Peyton*, 435 F.2d 1352 (4th Cir. 1970). The defendant may fear that rejection of the plea will mean imposition of a more severe sentence after trial or decrease his chances of obtaining a fair trial before a judge whom he has challenged. The concern that these fears may be translated into an involuntary plea have been admirably expressed in an often-quoted statement by Judge Weinfeld:

> "The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence. One facing a prison term, whether of longer or shorter duration, is easily influenced to accept what appears the more preferable choice" (footnote omitted).

*United States ex rel. Elksnis v. Gilligan*, 256 F.Supp. 244, 254 (S.D.N.Y.1966).

It is contended that these concerns do not affect the present case because Judge Werker has indicated that the sentence he discloses prior to entry of a guilty plea will also be binding for purposes of a trial if Santos-Figueroa refuses to plead guilty. Equipped with the knowledge of the full implications of his plea, it is argued, the defendant's decision will be more likely to comport with the requirement of an informed plea. See *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747, 756 (1970).

These arguments fail to consider, however, that quite apart from the sentencing process, the defendant may in fact be prejudiced or believe himself to be prejudiced if he does not plead guilty in response to the judge's proposed sentence. The defendant must view the judge as the individual who conducts the trial and whose rulings will affect what the jury is to consider in determining guilt or innocence. The defendant may therefore be reluctant to reject a proposition offered by one who wields such immediate power. Regardless of the judge's objectivity, it is the defendant's perception of the judge that will determine whether the defendant will feel coerced to enter a plea. Any compulsion felt by the defendant will surely be aggravated where, as here, the government refuses to participate and is absent from the bargaining process and the defendant deals only with the judge in framing the terms of the agreement. The defendant is then more likely to come to view the judge as an adversary "rather than as an embodiment of (the) guarantee of a fair trial and just sentence." Gallagher, Judicial Participation in Plea Bargaining: A Search for New Standards, 9 Harv. Civ.Rights—Civ.Lib.L.Rev. 29, 44 (1974).

Nor can we fail to consider the subtle pressures that may be exercised by a judge against a defendant who rejects an opportunity, presented by such a response as the judge here proposes to make, the acceptance of which may relieve the judge of a lengthy trial. Any predilections of guilt that a judge might hold regarding a defendant must inevitably be reinforced by the knowledge that the defendant wishes to engage in plea bargaining discussions. While these factors inhere in all plea bargaining agreements, their effect on the voluntariness of the plea and the subsequent trial could only be greater where the judge is himself the active participant in constructing the terms of the rejected agreement.[7]

---

7. These factors should not be taken as a reflection on the impartiality of the respondent. We intend these statements only as a general observation on possible deleterious consequences of allowing judges to participate in plea agreement discussions by prematurely advising defendants of sentences.

■ It is immaterial whether we consider pre-plea disclosure of sentence to be per se coercive, see *United States ex rel. Elksnis v. Gilligan, supra,* or only one factor to be considered in determining voluntariness, see *United States ex rel. McGrath v. LaVallee,* 319 F.2d 308, 315 (2d Cir. 1963) (Friendly, *J.,* concurring and dissenting). Rule 11 is obviously intended totally to eliminate pressures emanating from judicial involvement in the plea bargaining process, and this necessarily includes any involvement of the court in divulging pre-plea sentence proposals which are equally likely to generate such pressures.

Rule 11 implicitly recognizes that participation in the plea bargaining process depreciates the image of the trial judge that is necessary to public confidence in the impartial and objective administration of criminal justice. As a result of his participation, the judge is no longer a judicial officer or a neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he has suggested to the defendant.

It would be naive to believe that disclosure of a sentence prior to entry of the plea merely supplies the parties with additional information and therefore does not alter the status of the trial judge. The judge's promise to indicate a specific sentence soon becomes the focal point of further discussions. His assurances to the defendant are the ultimate inducement to the plea: "Remove the promise and the basis for the plea falls." *United States ex rel. Elksnis v. Gilligan, supra,* 256 F.Supp. at 254. The judge's determination is not simply one more fact to be considered by the defendant in deciding upon a course of action. The defendant, as in this case, is unlikely to approach the judge until the parties have exhausted their own abilities to compromise. Thus, the judge's response to the inquiry becomes the essential element in the ensuing discussions. Consequently, the judge's indication of sentence necessarily constitutes "participat(ion) in such discussions."

■ Furthermore, the indication of sentence inevitably invites alterations and clarifications of the proposed sentence through direct negotiations with the judge. A defense counsel who obtains assurance, initially based solely on the presentence report, of a maximum sentence on charges similar to those involved in this case would probably next inquire if the judge would modify the sentence still further should the defendant cooperate with government, or if the judge would accept a plea to a lesser offense. Once the judge enters the plea process by announcing a proposed sentence, it becomes impossible not to indicate a response to additional relevant inquiries. Rule 11(e)(1) was designed to avert this very situation. The Rule is based on the sound principle that the interests of justice are best served if the judge remains aloof from all discussions preliminary to the determination of guilt or innocence so that his impartiality and objectivity shall not be open to any question or suspicion when it becomes his duty to impose sentence.

■ Even apart from the mandate of Rule 11, our duty to exercise a supervisory power over the administration of criminal justice in this circuit impels us to enjoin any such premature communication. Every consideration regarding the proper and just disposition of criminal cases teaches that the respondent's intended communication to counsel for Santos-Figueroa of a proposed sentence in the event of his guilty plea at this pretrial stage would constitute a premature interference with the normal prosecution of the case which in all probability would render the fair and expeditious disposition of the charges more difficult and uncertain.

Every criminal case involving two or more defendants presents a multitude of problems for solution before the issues are finally resolved as to all defendants.

Of the three defendants, only Santos-Figueroa has asked to be advised regarding sentence should he plead. The United States Attorney, as is his right, has refused to enter into any discussion regarding a recommendation of sentence. Judge Werker, in response to the request of Santos-Figueroa's counsel, has asked for a pre-sen-

tence report from the probation officer and Santos-Figueroa has consented to this as Rule 32 requires. However at this stage, with the charges against Holmes and Hicks undetermined, it is difficult if not impossible fully to advise the judge regarding all matters relevant to a proper sentence. So far as the record shows, the court does not know what if any assistance Santos-Figueroa might be able to give the government as to the charges in the indictment. See *United States v. Crowe*, 516 F.2d 824 (4th Cir. 1975). Nor can the court know how Santos-Figueroa may be able to assist the government or other law enforcement authorities regarding the investigation and solution of any other crimes. Indeed it is often inadvisable for the government to communicate such matters to the probation officer, or to the court, even if the United States Attorney knows them at this time before trial. Obviously every effort should be made to avoid ex parte communications to the court wherever possible. On the other hand, any premature public disclosure by the government of evidence relevant to sentencing may seriously affect the safety of other defendants or witnesses and jeopardize a full presentation of the government's evidence.

For that matter, the United States Attorney is not always in possession of all relevant facts until the charges against all the defendants have been resolved. The unfolding strategies of the parties and the discoveries of continuing preparation for trial bring new developments almost every day. Thus, until the issues have been disposed of as to all defendants by pleas of guilty or jury verdict, the court cannot be adequately advised of all factors relevant to sentence. For example, if there is a trial, an important consideration would be whether the defendant has committed perjury as a witness. *United States v. Hendrix*, 505 F.2d 1233 (2d Cir. 1974), cert. denied, 423 U.S. 897, 96 S.Ct. 199, 46 L.Ed.2d 130.

More important, it is obvious that the premature response of the judge, if permitted to proceed, might effectively put an end to any hope which the government might

entertain of being able to secure Santos-Figueroa's cooperation in solving this and possibly other crimes.

At the very least, a pretrial request for a pre-sentence report will delay the time when the trial of any of the defendants can go forward. While we note that Judge Werker wished to have the report within 22 days, such reports usually take from 4 to 6 weeks. Meanwhile the codefendants and the government must wait until the report has been considered and acted upon in order to determine whether Santos-Figueroa is also to stand trial. The customary procedure of preparing pre-sentence reports only after plea or conviction avoids such problems.

In any event, while the time requirements of a speedy trial would be tolled with respect to any defendant, such as Santos-Figueroa, who seeks a response from the Court regarding a plea proposal, the time requirements regarding co-defendants would not be tolled. The consequence might be to embarrass the court and the government with respect to compliance with the Prompt Disposition rules, under Rule 50, Fed.R.Crim.P., and the Speedy Trial Act, 18 U.S.C. § 3161–74.

On the other hand, if the judge's proposed sentence is rejected by the defendant and he goes to trial, the question then arises whether that judge should preside at the trial. Such a defendant would probably feel that the trial should be conducted by a judge who is not steeped in the knowledge of his guilt and who has not expressed an opinion on punishment. Under such circumstances many judges would feel that they should recuse themselves from presiding at the trial. The substitution of another judge who must then take over necessarily adds to delay in disposition of the case and this necessarily affects numerous defendants and their counsel.

Finally, the effects of the proposed procedure on the voluntariness of the plea, discussed supra, increase the possibility that the defendant will attempt to recant the plea by collateral attack. See *United States ex rel. McGrath v. LaVallee*, 319

F.2d 308, 315 (2d Cir. 1963) (Friendly, *J.*, concurring and dissenting). To the extent that this occurs, the procedure frustrates the very policy that Rule 11 seeks to embody of providing an informed method to dispose finally of criminal matters.

■ Accordingly, we conclude that fair and expeditious disposition of criminal cases is best achieved by the trial judge completely abstaining from any participation in any discussions or communications regarding sentence, except as provided in Rule 11, Fed.R.Crim.P.

We grant the petition for a writ of mandamus and direct that the respondent refrain from communicating, directly or indirectly, to any defendant in *United States v. Harry Santos-Figueroa, et al.* the sentence to be imposed upon that defendant prior to the entry of a plea of guilty.

WATERMAN, Circuit Judge, concurs in the result.