STATE of Alaska, Petitioner,

v.

The Honorable Seaborn J. BUCKALEW, Jr., Judge of the Superior Court, and the Superior Court for the State of Alaska, Third Judicial District, Respondents,

David James Schmid, Real Party in Interest.

STATE of Alaska, Petitioner,

v.

David James SCHMID, Respondent.

No. 3143.

Supreme Court of Alaska.

March 14, 1977.

Michael J. Keenan, Ivan Lawner, Asst. Dist. Attys., and Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for petitioner.

Richard G. Lindsley, Anchorage, for respondent Schmid.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

BURKE, Justice.

OPINION

The State of Alaska, petitioner, seeks a writ of prohibition preventing the Honorable Seaborn J. Buckalew, Judge of the Superior Court, from sentencing David James Schmid on a pending drug charge. In the event that the petition is granted, the state further seeks assignment of another judge and asks for an order requiring that Schmid be given an opportunity to withdraw his plea of guilty to the charge.

The state's main contention is that Judge Buckalew acted improperly by participating in negotiations leading to the entry of Schmid's plea. Since the petition raises a significant question concerning the proper exercise of judicial authority and the administration of criminal justice in Alaska

that might evade review if not considered at this time, we consider prohibition to be an appropriate method of review. *See United States v. Werker*, 535 F.2d 198, 200 (2d Cir. 1976).

On February 20, 1976, Schmid was arrested at Anchorage International Airport in possession of 79 pounds of marijuana and a quantity of hashish oil. Subject to certain exceptions not applicable to the instant case, the possession of marijuana is prohibited by AS 17.12.010.[1] When such possession is for the purpose of sale, AS 17.12.-110(b)(1) provides that the offender is guilty of a felony, punishable "for the first offense, by imprisonment for not more than 25 years, or by a fine of not more than $20,000, or by both." On April 5, 1976, an Anchorage grand jury returned an indictment charging Schmid with possession of marijuana for the purpose of sale.

Following his arraignment in superior court, Schmid entered a plea of not guilty. Thereafter, on October 12, 1976, he changed his plea to guilty. The change of plea occurred immediately after an off the record, in-chambers conference attended by Judge Buckalew, Schmid, Richard G. Lindsley, Schmid's attorney, and Assistant District Attorney Michael J. Keenan.

The absence of a verbatim transcript hampers out ability to determine exactly what took place in Judge Buckalew's chambers. However, the following facts are not in serious dispute: after being advised of certain mitigating factors including the fact that Schmid was a second year law student with no prior criminal record, Judge Buckalew indicated to the defendant that if he changed his plea he could probably expect a maximum sentence of 90 days incarceration, to be served so as not to conflict with Schmid's law school classes, and that the judge would consider a deferred imposition of sentence.[2] Schmid was cautioned by Judge Buckalew that such a favorable disposition was dependent on a variety of factors, and that if after receiving a presentence report any additional information indicated a more severe sentence was demanded, he would so advise Schmid and afford him an opportunity to withdraw his guilty plea.

Upon conclusion of the in-chambers conference, the parties immediately removed themselves to the courtroom where Judge Buckalew, in open court, restated his intentions with regard to sentencing and advised the defendant of the various rights he would give up by changing his plea. Schmid thereupon withdrew his not guilty plea and entered a plea of guilty. The prosecutor objected to the court's involvement in open court.

Contending this procedure objectionable, the State of Alaska petitioned this court for a writ of prohibition.

The gist of the state's argument is that Judge Buckalew improperly made himself a party to the process commonly known as "plea bargaining." Plea bargaining between prosecution and defense, while a rec-

---

1. AS 17.12.010 provides:

 Except as otherwise provided in this chapter, it is unlawful for a person to manufacture, compound, counterfeit, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, a depressant, hallucinogenic or stimulant drug.

 AS 17.12.150 provides in part:
 In this chapter

 (3) 'depressant, hallucinogenic or stimulant drug' means:
 (A) cannabis

 (4) 'cannabis' includes all parts of the plant Cannabis Sativa L., whether growing or not; the seeds of this plant; the resin extracted from any part of this plant; and every compound, manufacture, salt, derivative, mixture, or preparation of this plant, its seeds, or resin;

2. AS 12.55.085(a) provides:

 If it appears that there are circumstances in mitigation of the punishment, or that the ends of justice will be served, the court may, in its discretion, suspend the imposition of sentence and may direct that the suspension continue for a period of time, not exceeding the maximum term of sentence which may be imposed, and upon the terms and conditions which the court determines, and shall place the person on probation, under the charge and supervision of the probation officer of the court during the suspension.

ognized and accepted practice in many parts of the United States, is contrary to present policies of the Alaska Department of Law, as established by the Attorney General.[3]

On October 15, 1976, three days after the above described conference and change of plea, we rendered out decision in *State v. Carlson*, 555 P.2d 269 (Alaska 1976). In that case we held that the superior court could not accept a plea of guilty to a reduced charge over the state's objection where a defendant charged with murder sought to plead guilty to the lesser included offense of manslaughter. On the application of the state, we issued a writ of prohibition ordering the superior court not to accept the plea. Our decision was based in part on the fact that the trial judge had engaged in plea bargaining. We said:

> We are also concerned that a judge's involvement as a plea negotiator would detract from the judge's neutrality, and would present a danger of unintentional coercion of defendants who could only view with concern the judge's participation as a state agent in the negotiating process. (citation omitted)[4]

The American Bar Association Standards Relating to Pleas of Guilty § 3.3(a), provides:

> *Responsibilities of the trial judge.*
>
> (a) The trial judge should not participate in plea discussions.

In the commentary to that section we find the following language:

> Although it is by no means the prevailing practice, it is not uncommon for trial judges to participate in plea discussions and to promise or predict certain concessions in the event the defendant pleads guilty. . . .

The standard takes the position that judicial participation in plea discussions is undesirable. Compare Informal Opinion No. 779, ABA Professional Ethics Committee: 'A judge should not be a party to advance arrangements for the determination of sentence, whether as a result of a guilty plea or a finding of guilty based on proof.' 51 A.B.A.J. 444 (1965).

There are a number of valid reasons for keeping the trial judge out of plea discussions, including the following: (1) judicial participation in the discussions can create the impression in the mind of the defendant that he would not receive a fair trial were he to go to trial before this judge; (2) judicial participation in the discussions makes it difficult for the judge objectively to determine the voluntariness of the plea when it is offered; (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report; and (4) the risk of not going along with the disposition apparently desired by the judge may seem so great to the defendant that he will be induced to plead guilty even if innocent. (citation omitted)[5]

Such reasoning persuaded the United States Court of Appeals, Second Circuit, to issue a writ of mandamus requiring a federal district court judge to refrain from communicating, directly or indirectly, to a criminal defendant, prior to the entry of a plea of guilty, the sentence that he would impose if such a plea was subsequently submitted. In that case, *United States v. Werker*, 535 F.2d 198 (2d Cir. 1976), the court rested its decision on an express provision found in Rule 11(e), Fed.R.Crim.P., prohibiting judicial participation in plea

---

**3.** *State v. Carlson*, 555 P.2d 269, 273 n.4 (Alaska 1976) (concurring opinion):

Since August of 1975 the Attorney General has instituted a policy which purports, in its general outlines, to prohibit all state prosecutors from sentence bargaining and also, for the most part, charge bargaining.

It is important to note that the issue in this case is not the propriety of the trial court approving or disapproving an agreement

reached by the parties, but, instead, involves a situation where the court has engaged directly in plea discussions with the defense leading to the entry of a guilty plea.

**4.** 555 P.2d at 272.

**5.** ABA Standards Relating to Pleas of Guilty § 3.3(a), Commentary at 72–73 (1968).

bargaining, but made clear that even in the absence of such a provision the result would have been the same, saying:

> Even apart from the mandate of Rule 11, our duty to exercise a supervisory power over the administration of criminal justice in this circuit impels us to enjoin any such premature communication. Every consideration regarding the proper and just disposition of criminal cases teaches that the [trial judge's] intended communication to counsel for [defendant] of a proposed sentence in the event of a guilty plea at this pretrial stage would constitute a premature interference with the normal prosecution of the case which in all probability would render the fair and expeditious disposition of the charges more difficult and uncertain.[6]

In *Carlson, supra,* we took a similar position, after noting the absence of an express prohibition in our own rules of criminal procedure, saying:

> We recognize that the only substantial difference between Alaska Criminal Rule 11(e)(1) and the Federal criminal rule of the same number is that the federal rule contains the explicit prohibition against judicial participation in bargaining while the Alaska rule does not. The policies we have discussed persuade us that this difference should not be dispositive.[7]

The court, in *Werker, supra,* also expressed its concern for the public interest involved, saying:

> Rule 11 [of the Federal Rules of Criminal Procedure] implicitly recognizes that participation in the plea bargaining process depreciates the image of the trial judge that is necessary to public confidence in the impartial and objective administration of criminal justice. As a result of his participation, the judge is no longer a judicial officer or a neutral arbi-

ter. Rather, he becomes or seems to become an advocate for the resolution he has suggested to the defendant.[8]

We agree.

 The foregoing considerations persuade us to now grant the petition and to hold that henceforth Alaska's trial judges shall be totally barred from engaging in either charge or sentencing bargaining.[9] Accordingly, we direct that a writ of prohibition issue enjoining the Honorable Seaborn J. Buckalew from passing sentence on the defendant below. The case is remanded to the superior court with instructions to the presiding judge to immediately assign the matter to another trial judge. The defendant, prior to any further proceedings in the superior court, shall be given an opportunity to withdraw his plea of guilty.

By our holding we do not intend any criticism of Judge Buckalew or his actions in this case.[10] Prior to our decision in *Carlson, supra,* there was nothing in the published opinions of this court or any of our rules of criminal procedure to suggest that such conduct by a trial judge would be considered improper. As already noted, our decision in *Carlson* was not rendered until three days after the events giving rise to the petition in the instant case. We are confident that Judge Buckalew was acting entirely in good faith and with genuine concern for the just and expeditious resolution of criminal cases.

We are compelled to discuss one further issue. As noted earlier in this opinion, the conference in Judge Buckalew's chambers was not electronically recorded. The absence of a record presents grave problems when it becomes necessary, as it did in this case, to reconstruct the events that occurred in the court below. We therefore take this opportunity to call to the attention of the trial bench and bar the following

---

**6.** 535 F.2d at 203.

**7.** 555 P.2d at 272 n.5.

**8.** 535 F.2d at 203.

**9.** This position is supported by the majority opinion in *State v. Carlson,* 555 P.2d at 272 and was specifically urged by Justice Rabinowitz,

joined by Chief Justice Boochever, in his concurring opinion in that case, 555 P.2d at 274.

**10.** Nor should our decision in any way be construed as commenting on the appropriateness of the sentence the trial court indicated it would impose.

provisions of the Alaska Rules Governing the Administration of All Courts.

Rule 25 provides:

So far as practicable, all judicial business involving the trial of causes *and conferences with members of the Bar or litigants shall be transacted in open court.* (emphasis added)

Rule 47(a) provides:

Electronic recording equipment shall be installed in all courts for the purpose of recording all proceedings required by rule or law to be recorded. Such electronic recordings shall constitute the official court record. It shall be the responsibility of each judge or magistrate to require that the electronic recording equipment in his court be operated only by qualified personnel in such manner and under such conditions as to insure the production of a readable record of all proceedings.

We recognize that it is a common practice in the trial courts to conduct informal conferences in chambers. So long as all parties are in attendance or adequately represented, so as to avoid improper *ex parte* communications, there is nothing wrong with this practice. It has the advantage of allowing many of the routine matters surrounding any case to be disposed of quickly in a relaxed setting, and promotes the efficient use of court facilities by leaving courtrooms available for ongoing trials and other proceedings where more formality is required. Nevertheless, in most cases a record should be made of such conferences.

REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

CONNOR, Justice, dissenting.

I respectfully dissent. I do not believe that the rationale of our recent decision in

State v. Carlson, 555 P.2d 269 (Alaska 1976), requires us to extend its holding to the significantly different facts of this case.

In *Carlson*, the proposed disposition was the result of two-party negotiations between the defendant and the trial judge, after the prosecutor had refused to accept the defendant's offer. The proposed disposition included a plea of guilty to a lesser offense included in the one which the prosecutor had charged.

We held that form of bargain impermissible for two reasons. First, the judge's reduction of the charge without the consent of the prosecutor constituted an invasion of the prosecutorial function of charging defendants, and hence a violation of the constitutional principle of separation of powers. 555 P.2d at 271–72 and n.3. Second, we were concerned with possible unintended coercion of the defendant when the judge who will try him if he does not plead guilty acts essentially as the surrogate of the prosecution in the bargaining process. *Id.* at 272.

The circumstances of the instant case are significantly different.[1] No "plea bargaining" in the usual sense of that term took place, with either the judge or the prosecutor. The defendant did not go to the judge with an offer which the prosecutor had refused to accept. Instead, Judge Buckalew informed the defendant of the type of sentence he could expect if he decided to plead guilty to the charged offense, contingent upon the presentence report not revealing additional information adverse to the defendant.

This judicial participation in no way concerned the charging function. I view it as an exercise of the judicial function of disposing of cases.[2] Hence separation of powers considerations do not support a decision

---

1. I concur in my colleagues' comments concerning the practice of holding hearings off the record.

2. The dictum in *Public Defender Agency v. Superior Court*, 534 P.2d 947, 950 (Alaska 1975), that the disposition of cases is an executive function refers, at most, to the discretion of the

prosecutor to dismiss pending criminal cases. Read in light of the authorities cited to support it, it does not support an extension of the *Carlson* holding, which relied on *Public Defender*, to the instant case.

In *Carlson* itself we said,

"[A]lthough the court may judicially determine the disposition of a charge based on the

that the trial judge's conduct here was improper.

Nor do I believe that the other basis of the *Carlson* decision, the fear of unintended judicial coercion of the defendant, supports the state's position in this case. Judge Buckalew did not give the defendant reason to believe he was the surrogate of the prosecution. He did not participate in give-and-take negotiating.

If anything, Judge Buckalew's indication to the defendant of his tentative sentencing decision enabled the defendant and his counsel to make a better-informed decision on whether to plead guilty. One of the consequences of the rule adopted by the majority is "paradoxically, to deny the defendant important and relevant information which might be helpful in choosing a plea. Such a rule enforces the defendant's . . . right to plead in the dark." Comment, Official Inducements to Plead Guilty, 32 U.Chi.L.Rev. 167, 183 (1964).

The general sentencing proclivities of trial judges are often well known to criminal defense attorneys. No one suggests that attorneys do not or should not use this information in advising their clients whether to plead guilty. *See People v. Earegood*, 12 Mich.App. 256, 162 N.W.2d 802, 809 (1968). Here, Judge Buckalew gave the defendant and his counsel the benefit of his sentencing attitudes as applied to the circumstances of this defendant and this crime. In my view, this has more in common with attorneys' generalized knowledge of judges' sentencing standards than with the negotiated disposition which we held improper in the *Carlson* case. *See* D. Newman, *Conviction: The Determination of Guilt or Innocence Without Trial* 48, 92–94 (1966); Note, Guilty Plea Bargaining, 112 U.Pa.L.Rev. 865, 893 (1964).

I have serious doubts whether it is a wise response to the much-maligned practice of "plea bargaining" to required that it occur, if at all, away from ongoing judicial scrutiny. *See generally* Enker, Perspectives on

Plea Bargaining, in Pres. Comm. on Law Enforcement & the Adm. of Justice, Task Force Report: The Courts 108, 110–12, 117–18 (1967); Note, Restructuring the Plea Bargain, 82 Yale L.J. 286 (1972). The defendant may feel as much, or more, coercion from the prosecutor during bargaining as from a judge. Note, *supra*, 82 Yale L.J. at 299, 305. *See also* Note, The Unconstitutionality of Plea Bargaining, 83 Harv.L. Rev. 1387, 1393 (1970).

I agree that trial judges should not engage in the type of conduct we held improper in *Carlson*, but disagree with the conclusion that the trial judge's conduct in this case should be prohibited. Accordingly, I would deny the writ and other relief requested by the state.

evidence, the law and its sentencing power, it may not, in effect, usurp the executive function of choosing which charge to initiate

based on defendant's willingness to plead guilty to a lesser offense." 555 P.2d at 271–72.