Robert L. Tobik, Cuyahoga County Public Defender, and Robert M. Ingersoll, Assistant Public Defender, for appellee.

DISCIPLINARY COUNSEL *v.* MEDLEY.

[Cite as *Disciplinary Counsel v. Medley,*
104 Ohio St.3d 251, 2004-Ohio-6402.]

(No. 2004–0082—Submitted June 29, 2004—Decided December 8, 2004.)

MOYER, C.J.

{¶ 1} Respondent, Judge William S. Medley, Attorney Registration No. 0031001, is the judge of the Gallia County Court of Common Pleas, Probate Division. He was admitted to the practice of law in Ohio in 1980.

{¶ 2} Between October 2002 and August 2003, relator, Disciplinary Counsel, charged respondent with six counts of violations of the Code of Judicial Conduct that occurred while respondent was the sole judge on the Gallipolis Municipal Court. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and received comprehensive stipulations of fact, testimony, and exhibits. The panel dismissed Counts II and V, leaving Counts I, III, IV, and VI to be decided.

{¶ 3} The board found no violations in Counts I and IV and dismissed those counts. It did, however find that respondent had violated the Code of Judicial Conduct and the Code of Professional Responsibility based on the facts proven concerning Counts III and VI. The board recommended that respondent be suspended for a period of 18 months, with six months of the suspension stayed.

{¶ 4} Relator filed objections to the report and recommendations of the board. Relator argues that respondent's actions in Count I constituted violations of the Code of Judicial Conduct or the Code of Professional Responsibility and that Count I should not have been dismissed.

{¶ 5} Respondent also filed objections to the board's report and recommendations. Although the panel and the board found no violation of DR 1–102(A)(4), which prohibits conduct involving deceit or misrepresentation, respondent disputes the implication that his actions outlined in Count III, or his defense of them, involved misrepresentation. He contends that even if we conclude that he engaged in improper ex parte communications, "his lack of personal motive, initiation, or substantive conversations should mitigate [sic] in favor of rejecting the Board's recommended sanction." Moreover, he takes issue with the board's conclusion in Count VI that the procedure he followed in small-claims court, as discussed infra, involved unethical conduct.

{¶ 6} Our review of Counts I, III, and VI follows.

### Count I—Acceptance of Guilty Plea and Dismissal of Other Charges in the Absence of Counsel

{¶ 7} In 2000, Brandon Jordan was arrested and arraigned on charges of speeding, in violation of R.C. 4511.21(D)(1); driving under the influence, in violation of R.C. 4511.19(A)(1); possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1); and carrying a concealed weapon, in violation of R.C. 2923.12. It was not typical in the Gallipolis Municipal Court for the city solicitor, who prosecuted criminal offenses, to appear at arraignments, and neither counsel for the city nor counsel for the defense was present at Jordan's arraignment.

During that proceeding, respondent misadvised Jordan of the maximum sentences allowed by law for the charged offenses, generally understating the maximum possible duration of a jail sentence and the maximum fines authorized by statute. He then requested that Jordan enter a plea.

{¶ 8} Jordan asked the court whether he would be required to return to court at a later date if he pleaded not guilty and was advised that he would be required to appear. Jordan then admitted that he had been carrying a knife in his vehicle and explained his reason. Having heard only Jordan's version of the circumstances, respondent dismissed, sua sponte, the charge of carrying a concealed weapon, telling Jordan, "Alright. You know, I don't even have any problem with throwing it out." Without the benefit of counsel, Jordan then entered a guilty plea to the remaining charges. Respondent advised him of his rights, accepted his plea, and sentenced him.

{¶ 9} Thereafter Jordan obtained counsel and moved the court to vacate his sentence or, in the alternative, to stay execution of the sentence. Respondent denied the motion. On appeal, the court of appeals reversed the judgment and remanded the cause to the trial court.

{¶ 10} The panel found that respondent had improperly assumed the roles of both the prosecutor and defense counsel, as well as that of the court, in disposing of the charges against Jordan. It determined that respondent had, in effect, unilaterally negotiated and accepted a plea bargain in the absence of counsel for the city. It found that respondent's actions violated Canons 1 (a judge shall uphold the integrity and independence of the judiciary); 2 (a judge shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary); 3(B)(7) (a judge shall not initiate, receive, permit or consider communications made to the judge outside the presence of the parties or their representatives concerning a pending or impending proceeding); and 4 (a judge shall avoid impropriety and the appearance of impropriety in all the judge's activities); and DR 1–102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice).

{¶ 11} The board, however, concluded that these facts did not demonstrate a violation of the Code of Judicial Conduct or the Code of Professional Responsibility. It concluded that "if a violation were found on this count, it would serve to unduly restrict municipal court judges in their daily administration of justice given the real life pressures of docket management." In contrast, relator contends that respondent's conduct was improper even though relator acknowledges that respondent's conduct was "motivated by his desire to expedite the process."

{¶ 12} We agree with relator and the board that respondent's conduct was not the product of malevolent intent. Nevertheless, the proper administration of

justice required the respondent to respect the prosecutor's absence at arraignment proceedings. It was not appropriate to dispose of some criminal charges against the defendant in exchange for a guilty plea to other charges, without first affording the prosecution an opportunity to be heard. To do so compromises the integrity of the adversarial process upon which our criminal-justice system is based. See *In re Judges of Cedar Rapids Municipal Court* (1964), 256 Iowa 1135, 1137, 130 N.W.2d 553 ("While procedures in the handling of minor offenses may understandably be informal to a considerable extent, a fair opportunity for each side to present its case must be afforded"); *In re Cox* (Me.1989), 553 A.2d 1255, 1258, citing *United States v. Werker* (C.A.N.Y.1976), 535 F.2d 198, 203 ("undue participation in the plea bargaining process taints the public's perception of the trial judge"); and *In re Inquiry Concerning Clayton* (Fla.1987), 504 So.2d 394, 395 ("Except under limited circumstances, no party should be allowed the advantage of presenting matters to or having matters decided by the judge without notice to all other interested parties").

{¶ 13} We therefore find that the conduct described in Count I violated the judicial Canons charged.

### Count III—Collection Case

{¶ 14} In 1998, an action on an account was filed by Holzer Hospital Foundation, Inc. ("Holzer") against Roger Watson, a local official and two-term chair of the county political party of which respondent was a member. On June 11, 1998, Holzer moved, in writing, for a default judgment. Respondent entered a default judgment against Watson in the amount of $6,342.79.

{¶ 15} On June 17, 1998, respondent issued an order that recited that Watson had "orally applied for relief from judgment pursuant to Rule 60(B)," rescinded the June 11, 1998 default judgment, and provided Watson 28 days to answer the complaint. Respondent entered this order despite the fact that the Civil Rules do not provide for an oral motion for Civ.R. 60(B) relief unless made during a hearing or trial and require service of a written Civ.R. 60(B) motion upon other parties who have appeared.[1]

{¶ 16} Respondent stipulated that Watson did not submit a written motion requesting relief from judgment. Watson testified that he talked to respondent on the telephone and told him that he had never received a copy of the complaint.

---

1. Civ.R. 7(B) provides that an application for an order is to be made "by motion which, unless made during a hearing or a trial, shall be made in writing." The motion "shall state with particularity the grounds therefor, and shall set forth the relief or order sought." Civ.R. 5(A) provides that every written motion must be served upon each party who has appeared in the action.

{¶ 17} Despite having received relief from the default judgment, Watson did not file an answer within the 28 days provided by the court, and on March 1, 1999, Holzer filed another motion for default judgment. Respondent set a pretrial conference for April 9, 1999. Watson did not appear. On April 11, 1999, respondent entered a second default judgment against Watson.

{¶ 18} On February 6, 2002, Holzer filed a praecipe instructing the Clerk of the Gallipolis Municipal Court to prepare a certificate of judgment based on the 1999 default judgment. The certificate was prepared and filed that same day. Within days, Watson went to the courthouse to speak to respondent about removing the judgment lien, which was impeding his receipt of the proceeds of a real-property sale. Watson testified that he had approached respondent on his own initiative while "aggravated" and "mad" and that respondent had said, "I'll get it taken care of and it will be off before evening." Watson specifically acknowledged that Holzer's counsel was not present during this exchange and that only he and respondent were present at the meeting.

{¶ 19} Respondent prepared a journal entry, filed on February 13, 2002, representing that Watson had appeared in open court and requested that he be allowed to file an answer. The entry continued: "[Watson] is given the right to file his answer instanter. Set for pretrial—Remove any Default judgments." Although Watson filed an answer that same day, the action remained pending without resolution throughout the remainder of respondent's tenure as judge of the Gallipolis Municipal Court.

{¶ 20} Relator alleged that this conduct exhibited violations of Canons 1, 2, 3(B)(7), 3(B)(8) (a judge shall dispose of all judicial matters promptly, efficiently, and fairly and comply with the guidelines set forth in the Rules of Superintendence), 3(E)(1) (a judge shall disqualify himself in a proceeding in which the judge's impartiality might reasonably be questioned), 4, and 4(A) (a judge shall not allow family, social, political, or other relationships to influence the judge's judicial conduct or judgment). Relator further asserted violations of DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation) and 1–102(A)(5).

{¶ 21} With regard to Count III, the panel and the board found that the charged conduct did not violate Canons 3(E)(1) or 4(A) or DR 1–102(A)(4). But respondent's ex parte communications with Roger Watson and the undue delay in the disposition of Holzer's claim were found to be violations of the remaining judicial Canons and Disciplinary Rules charged.

{¶ 22} Watson testified that he had spoken with respondent three times in respondent's office and once on the street about the Holzer claim. He also recalled one conference call in which he communicated with respondent via

speaker phone while counsel for Holzer was present. He could not, however, remember when that conference call had occurred.

{¶ 23} Respondent essentially concedes that he engaged in ex parte communications with Watson but argues that it was unfair and unsupported for the board to imply that respondent had lied or otherwise misrepresented the facts in connection with this count.

{¶ 24} We note, however, that respondent represented in the court's journal entry of February 13, 2002, that Watson had "appeared in open court" and requested the opportunity to file an answer. This entry conveyed the false impression that Watson's request had been made in a formal court proceeding. Watson testified that no mention of a hearing occurred at the meeting, which he stated occurred in respondent's office rather than in court.

{¶ 25} Similarly, the record supports the factual conclusion that the default-judgment creditor, Holzer, was not allowed an opportunity to be heard before the court entered the order, which, at best, constituted the grant of Civ.R. 60(B) relief made pursuant to an oral, out-of-court, ex parte motion to "[r]emove any Default judgments."

{¶ 26} We therefore find that respondent's conduct as described in Count III involved dishonesty, fraud, deceit, or misrepresentation in violation of DR 1–102(A)(4), as well as violations of the judicial Canons with which he was charged.

### Count VI—Small–Claims Cases

{¶ 27} While he was judge of the Gallipolis Municipal Court, respondent used the following procedure in debt-collection cases in small-claims court. The court made available to prospective plaintiffs a preprinted complaint form for use in filing actions. After a complaint was filed, the deputy clerk of the court entered a trial date on the printed complaint form. The complaint was then sent to the named defendant by the court by certified mail.

{¶ 28} Respondent would thereafter employ a second printed form that included a checklist of various dispositional options. If the defendant failed to appear on the trial date, respondent would determine whether the defendant had been properly served. If so, respondent would check another box on the prepared form indicating that the defendant had not answered the complaint and was therefore in default. The box further stated that judgment is entered in the plaintiff's favor, including an award of statutory interest and costs, in a sum equal to the amount demanded in the complaint.

{¶ 29} Typically the court checked another box ordering the defendant to pay the judgment in full within 30 days. This section of the form advised the defendant that if the judgment was not paid, the defendant would be required to appear at a hearing "to arrange payment" on a date filled in in advance on the

form. The text further advised that "[f]ailure to appear will result in a warrant for the arrest of the defendant(s)." After the form was signed by respondent, it would be entered as a judgment in favor of the plaintiff.

{¶ 30} Typically, if the defendant had not paid within 30 days and did not appear at the scheduled court hearing, another box would be checked indicating that the defendant had failed to appear for the hearing and ordering that a "warrant be issued for arrest of the defendant(s)." When respondent checked this box and signed the form, a bench warrant would be provided to law enforcement for execution. The bench warrant would set bond in the exact amount of the judgment, plus interest and costs, without allowing for the possibility of release upon payment of a ten percent bond. Respondent acknowledged that "significant numbers" of judgment debtors were in fact arrested on these warrants, sometimes in counties hundreds of miles away, and were not released until they posted bail, often in the amount of their debt.

{¶ 31} The procedure followed by respondent was efficient. He testified that collections by the court increased from about $90,000 in 1993 to approximately $800,000 in 2003, with only one court staff member processing the claims. As amounts were received by the court, the Gallipolis Municipal Court would issue checks to judgment creditors.

{¶ 32} The panel found this procedure to be "offensive and wholly inappropriate." It concluded that a significant number of judgment debtors had been arrested on small-claims warrants although arrest is not an authorized method to collect judgments. It questioned whether the constitutional rights of small-claims defendants had been infringed.

{¶ 33} Accordingly, the panel found the actions of respondent equivalent to the operation of a free collection service for small-claims judgment creditors in violation of Canons 1 and 2 and DR 1–102(A)(5). The board adopted the panel's findings of fact and conclusions of law as to Count VI without additional comment.

{¶ 34} Respondent claims that the procedure he followed was consistent with R.C. 1925.13(B) and 2705.02.[2] He denies that the procedure he followed denied small-claims defendants their due-process rights.

---

2. {¶ a} R.C. 1925.13(B) provides:

{¶ b} "If, within thirty days after judgment, the judgment is not satisfied and the parties have not otherwise agreed, the court, upon the request of the judgment creditor, shall order the judgment debtor to file, on a form prepared by the court, a list of the judgment debtor's assets, liabilities, and personal earnings. The form shall contain a notice that failure to complete the form and return it to the court within one week after receipt may result in a citation for contempt of court. Any party who, with notice of the possible contempt citation, willfully fails to comply with

{¶ 35} We need not, however, express an opinion as to whether these litigants were denied constitutional rights in order to recognize that respondent fell short of his ethical obligations in managing small claims. It is apparent that respondent approached small-claims suits with a predisposition in favor of plaintiff-creditors and a willingness to disregard established law governing the collection of judgments. Respondent relieved judgment creditors of any obligation to enforce collection of their own judgments once granted.[3] Indeed, respondent told the panel, "There's no sense having a small claims court if you give them a judgment and then you say now you can go out and collect. * * * In Gallia County these people want results. They want the court to work for them. Okay? Judge in Columbus, judge in Cleveland, he can say, hey, you guys go out and collect this yourself. Go get an attorney or here's a pamphlet. It doesn't work that way." Notably, both the deputy clerk largely responsible for processing those claims and respondent himself acknowledged that the court had, in effect, accomplished a transfer of the responsibility of collecting judgments from judgment creditors to the court itself.

{¶ 36} We note, however, that R.C. 1925.13(B), upon which respondent relies, provides for the court to take action to collect a small-claims judgment "upon the request of the judgment creditor," not upon the court's own initiative. Moreover, respondent's procedure circumvented the protections afforded by law to small-claims-court judgment debtors by making freedom from incarceration dependent upon payment in full of a small-claims judgment.[4]

---

the order of the court, may be cited for contempt of court as provided in Chapter 2705. of the Revised Code."

{¶ c} R.C. 2705.02 authorizes punishment for contempt under certain described circumstances. R.C. 2705.03 provides that in cases under R.C. 2705.02 "a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel." However, R.C. 2705.03 "does not prevent the court from issuing process to bring the accused into court, or from holding him in custody, pending such proceedings."

3.  Respondent acknowledged the availability of brochures in the courthouse summarizing small-claims-court law. One such brochure, prepared by the Ohio State Bar Foundation, summarizes available methods for the collection of small-claims judgments in Ohio, noting the availability of garnishment, attachment, and judgment liens on real estate. It also advises small-claims judgment creditors, "Remember, *you* must take action to force payment of your judgment. The court will not get your money for you—enforce your judgment—unless *you* take the required steps." (Emphasis sic.) Going to Court on Small Claims: A Guide to Bringing and Defending Suits on Small Claims in Ohio, Ohio State Bar Foundation (7th Ed.2001) 11.

4.  The Ohio State Bar Foundation guide further advises creditors that they "will need both patience and persistence if it is necessary to take court action to collect [a] judgment" because the law "allows judgment debtors to keep certain items or assets * * * so that judgment debtors have the basics with which to support themselves. Creditors cannot take these exempt items or assets." Going to Court on Small Claims, supra, at 13–14.

{¶ 37} In short, respondent failed to observe the high standards of conduct integral to preservation of the integrity and independence of the judiciary, in violation of Canon 1. He acted in a manner unlikely to promote public confidence in the impartiality of the judiciary, in violation of Canon 2, and prejudiced the administration of justice, in violation of DR 1–102(A)(5). Cf. *In re Hammermaster* (1999), 139 Wash.2d 211, 234, 985 P.2d 924 ("A judge's primary function is the administration of justice, not the collection of fines"); *In re Fuselier* (La.2003), 837 So.2d 1257 (judge who instituted, authorized, and participated in a worthless-check program in which the court pursued collection in behalf of the creditor, created the appearance of impropriety, abused his judicial authority, and engaged in conduct prejudicial to the administration of justice, thereby bringing the judicial office into disrepute).

*Sanction*

{¶ 38} In recommending a sanction for this misconduct, the panel considered the aggravating and mitigating circumstances of respondent's case pursuant to the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). In regard to aggravation, the panel noted that respondent had been previously disciplined for judicial misconduct,[5] that he had engaged in a pattern of misconduct, and that he had refused to acknowledge the wrongfulness of his actions. See BCGD Proc.Reg. 10(B)(1)(a), (c), and (g). In mitigation, the panel found that respondent had not acted with a dishonest or selfish motive, that he has a reputation for good character and fair dealings, and that he cooperated fully in the disciplinary proceedings. See BCGD Proc.Reg. 10(B)(2)(b), (d), and (e). The panel recommended an 18–month suspension with one year stayed.

{¶ 39} Relator recommended an 18–month suspension, with six months stayed. The board adopted this recommendation. Initially respondent argued for a public reprimand only, acknowledging responsibility only for inefficiently handling the Watson collection case in Count III. In this court he asks for a one-year suspension with the entire suspension stayed.

{¶ 40} In *Disciplinary Counsel v. Fowerbaugh* (1995), 74 Ohio St.3d 187, 191, 658 N.E.2d 237, we held that when an attorney engages in dishonest or fraudulent conduct in violation of DR 1–102(A)(4), "the attorney will be actually suspended from the practice of law for an appropriate period of time." Because respondent misrepresented facts in a journal entry as previously discussed in connection with Count III, an actual suspension is warranted based solely on that

---

5. This court issued a public reprimand to respondent in *Disciplinary Counsel v. Medley* (2001), 93 Ohio St.3d 474, 756 N.E.2d 104, based on his conduct in picking up a newly arrested person at the police station, driving her home, and thereafter refusing to recuse himself from the case.

conduct. Cf. *Disciplinary Counsel v. Hutchins*, 102 Ohio St.3d 97, 2004-Ohio-1805, 807 N.E.2d 303 (attorney's fabrication of magistrate's order in divorce action warranted six-month actual suspension).

{¶ 41} In addition, the facts proven in connection with Counts I and III demonstrate that respondent repeatedly engaged in ex parte communications with litigants. We note that we have in the past imposed a six-month actual suspension on a previously disciplined judge based on a single ex parte communication. *Disciplinary Counsel v. Ferreri* (2000), 88 Ohio St.3d 456, 727 N.E.2d 908.

{¶ 42} Moreover, on more than one occasion, respondent decided the merits of legal issues in both civil and criminal actions without first hearing from parties on both sides of those issues and in derogation of clear procedural rules. A judge is charged with the responsibility of enforcing the rule of law, both substantive and procedural. A judge may not blatantly disregard procedural rules simply to accomplish what he or she may unilaterally consider to be a speedier or more efficient administration of justice.

{¶ 43} In view of the fact that multiple ethical violations have been proven, we suspend respondent from the practice of law in Ohio for 18 months and, pursuant to Gov.Jud.R. III(7)(A), concurrently suspend him, without pay, from his position as judge of the Probate Court of Gallia County. We stay, however, the final six months of the suspension on condition that respondent commit no further misconduct. Costs are taxed to respondent.

Judgment accordingly.

RESNICK, F.E. SWEENEY, O'CONNOR and O'DONNELL, JJ., concur.

PFEIFER, J., concurs in part and dissents in part.

LUNDBERG STRATTON, J., dissents.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 44} I concur with the ultimate disposition in this case—an 18-month suspension with the final six months stayed on the condition that respondent commit no further misconduct. I dissent from the majority's holding as to Count I. I concur with it as to Count III and Count VI but would have instituted a more severe penalty on those counts. Since I would have instituted no penalty as to Count I, the majority and I end up at the same place with regard to the total length of suspension.

{¶ 45} This case contrasts what is acceptable (occasionally) in small-town practice from what is a manipulation of small-town practice. Count I exemplifies

the rough-around-the-edges, practical realities of being the lone municipal judge in a small county; Counts III and VI, on the other hand, demonstrate the corruptive nature of that singular power.

{¶ 46} I agree with the board's determination of Count I—the facts did not demonstrate a breach of the Code of Judicial Conduct or the Code of Professional Responsibility. The judge erred, but in the heat of the moment and without malevolent intent. His error was properly dealt with, and reversed, by the court of appeals.

{¶ 47} Counts III and VI, however, do not involve well-intentioned but ham-handed attempts to run an efficient courtroom. Those counts involve deliberate activity that was unquestionably improper and prejudicial to certain parties. In Count III, respondent removed a judgment without giving the creditor an opportunity to be heard and willfully manipulated the record in the case. Then, the action remained pending until respondent left the bench. The episode smacks of favoritism.

{¶ 48} Count VI reveals a thought-through plan to essentially revive debtors' prisons. Medley used as an excuse the expectations of the residents of Gallia County to have the court itself collect their small-claims judgments. Whatever their expectations, no citizen of any county can expect to have people jailed for failing to immediately pay their small-claims judgments. Although Gallia County was settled by members of the French aristocracy, they've been here since 1790, which is long enough to know that America doesn't work that way.

---

LUNDBERG STRATTON, J., dissenting.

{¶ 49} I dissent from the sanction imposed in this case. The majority suspends respondent from the practice of law in Ohio for 18 months and concurrently suspends him, without pay, from his position as judge of the Probate Court of Gallia County. The majority then stays the final six months of the suspension on condition that respondent commit no further misconduct.

{¶ 50} Although I recused myself from hearing or participating in *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, I have read the decision of the court. The majority in that case found that Judge O'Neill's conduct warranted a two-year suspension with one year stayed on conditions.

{¶ 51} In my view, Judge Medley and Judge O'Neill received substantially similar sanctions for fundamentally disparate conduct. The conduct in *O'Neill* was far more egregious and involved substantially more dishonesty. Therefore, I

find the majority's decision to impose such similar sanctions to be unwarranted. Rather, I would stay the final 12 months of respondent's sanction on condition that respondent commit no further misconduct.   Therefore, I respectfully dissent.

———————

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Assistant Disciplinary Counsel, for relator.

Montgomery, Rennie & Jonson, George D. Jonson and Ralph E. Burnham, for respondent.