**In re UNITED STATES of America, Petitioner,**

**James PECK, Plaintiff-Appellee,**

v.

**UNITED STATES of AMERICA, Defendant-Appellant.**

**No. 781, Docket 81–6198.**

United States Court of Appeals, Second Circuit.

Argued March 8, 1982.

Decided May 24, 1982.

---

Peter C. Salerno, Asst. U. S. Atty., New York City (John S. Martin, Jr., U. S. Atty., Richard N. Papper, Asst. U. S. Atty., New York City, on brief), for defendant-appellant and petitioner.

Edward Copeland, New York City (Eric M. Lieberman, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P. C., New York City, on brief), for plaintiff-appellee.

Before NEWMAN and CARDAMONE, Circuit Judges, and BURNS,* District Judge.

* The Honorable Ellen Bree Burns of the United States District Court for the District of Connecticut, sitting by designation.

NEWMAN, Circuit Judge:

James Peck, a participant in the first Freedom Ride, was assaulted by unknown private citizens when the Freedom Riders reached Birmingham, Alabama, on May 14, 1961. Claiming that the Federal Bureau of Investigation ("FBI") had prior knowledge of the attack through an informant in the Ku Klux Klan and that the FBI therefore breached its duty to protect him from the assault, see 42 U.S.C. § 1986 (1976), Peck instituted an action for damages and declaratory relief against the United States in the District Court for the Southern District of New York. To prove his claim that the FBI knew beforehand of the attack, Peck sought discovery of various documents, including an internal report ("Task Force Report") prepared by a group of Government investigators designated as the Gary Thomas Rowe, Jr. Task Force. Rowe had acted as an FBI informant within the ranks of the Ku Klux Klan from 1960 to 1965. In response to the discovery request the Attorney General asserted a claim of executive privilege. The District Court (Charles E. Stewart, Jr., Judge) upheld the Government's claim of privilege as to portions of the Task Force Report and denied the motion to compel discovery. *Peck v. United States*, 88 F.R.D. 65 (S.D.N.Y.1980). Thereafter, in late 1980, the Attorney General released to the public a "Summary of Results of the Department of Justice Task Force Investigation on Gary Thomas Rowe, Jr." In a decision rendered May 1, 1981, Judge Stewart held that the release of this summary operated as a waiver of the Government's privilege claim and therefore ordered the Government to disclose to Peck the relevant portions of the Task Force Report. *Peck v. United States*, 514 F.Supp. 210, 212–13 (S.D.N.Y.1981). The Government challenges this 1981 order in its appeal and, alternatively, in its petition for mandamus. For the reasons stated below, we hold that the order is not appealable and deny the petition for a writ of mandamus.

This is not the first time that the Government has sought interlocutory review of a discovery order. *See In re Attor-*

*ney General*, 596 F.2d 58, 61 (2d Cir.) ("*Socialist Workers Party*"), *cert. denied*, 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141 (1979); *In re United States*, 565 F.2d 19 (2d Cir. 1977), *cert. denied*, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978). As it has in the past, the Government again relies on the "collateral order" exception to the final judgment rule of 28 U.S.C. § 1291 (1976). *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In *Cohen*, the Supreme Court held that the final judgment rule does not apply to orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S. at 546, 69 S.Ct. at 1225. In an attempt to invoke the collateral order doctrine, the Government argues that the District Court's order adjudicated the Attorney General's privilege claim. The assertion of a privilege, however, does not convert what would otherwise be an interlocutory discovery ruling, integral to the merits of the case, into a collateral, and therefore appealable, order. In the *Socialist Workers Party* litigation, *In re Attorney General, supra*, 596 F.2d at 61, we held that even after a discovery order resulted in a ruling holding the Attorney General in contempt for failure to produce documents, the contempt ruling was not a collateral order despite the Government's substantial claim of informant privilege. Relying on *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), we stated that the collateral order doctrine is "limited . . . to orders which 'conclusively determine the disputed question, resolve an important issue *completely separate* from the merits of the action, and [are] effectively unreviewable on appeal from a final judgment.'" 596 F.2d at 61 (quoting *Coopers & Lybrand v. Livesay, supra*, 437 U.S. at 468, 98 S.Ct. at 2457 (emphasis added)). We refuse to make an exception to the traditional final judgment rule simply because the Attorney General was the contemnor. Just as in

*Socialist Workers Party,* the discovery ruling in this case is "integral to, rather than 'completely separate from,' the merits of the action." *Id.* Peck seeks to discover relevant information from a party opponent in civil litigation. Without question, as we have repeatedly noted in dismissing Government appeals of similar orders, the discovery order will be reviewable upon appeal from a judgment.

 The petition for a writ of mandamus presents a more substantial, but no more persuasive, claim. Initially, it is important to note that "mandamus cannot be utilized as a substitute for an appeal." *International Business Machines Corp. v. United States,* 480 F.2d 293, 298 (2d Cir. 1973) (*en banc*), *cert. denied,* 416 U.S. 979, 980, 94 S.Ct. 2413, 2414, 40 L.Ed.2d 776, 777 (1974); *see Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34–36, 101 S.Ct. 188, 189–191, 66 L.Ed.2d 193 (1980) (*per curiam*); *Schlagenhauf v. Holder,* 379 U.S. 104, 110, 85 S.Ct. 234, 238, 13 L.Ed.2d 152 (1964). Mandamus is an extraordinary remedy, the "touchstones" of which are "usurpation of power, clear abuse of discretion and the presence of an issue of first impression," *American Express Warehousing, Ltd. v. Transamerica Insurance Co.,* 380 F.2d 277, 283 (2d Cir. 1967); it "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967) (quoting *Roche v. Evaporated Milk Association,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)). Writs of mandamus are generally granted only in cases presenting exceptional circumstances or of extraordinary significance, *see, e.g., Schlagenhauf v. Holder, supra,* 379 U.S. at 110–11, 85 S.Ct. at 238; *In re Attorney General, supra,* 596 F.2d at 63–64; *Investment Properties International, Ltd. v. IOS, Ltd.,* 459 F.2d 705, 708 (2d Cir. 1972); *United States v. United*

*States District Court,* 444 F.2d 651, 655–56 (6th Cir. 1971), *aff'd on other grounds,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), and this Court has noted a special reluctance to grant such a remedy, *In re Attorney General, supra,* 596 F.2d at 63. "[M]ere error, even gross error in a particular case, as distinguished from a calculated and repeated disregard of governing rules, does not suffice to support issuance of the writ." *United States v. DiStefano,* 464 F.2d 845, 850 (2d Cir. 1972).

The Government characterizes this case as an exceptional one, involving extraordinary circumstances, but the cases it cites to support this designation are inapposite. In *Schlagenhauf v. Holder, supra,* the District Court had ordered the petitioner to submit to physical and mental examinations under Rule 35 of the Federal Rules of Civil Procedure. Regarding the Seventh Circuit's denial of mandamus, the Supreme Court stated that

> the petition was properly before the court [of appeals] on a substantial allegation of usurpation of power in ordering any examination of defendant, an issue of first impression that called for the construction and application of Rule 35 in a new context. The meaning of Rule 35's requirements of "in controversy" and "good cause" also raised issues of first impression.

379 U.S. at 111, 85 S.Ct. at 238. Similarly, in *Investment Properties International, Ltd. v. IOS, Ltd., supra,* we granted mandamus in a case in which the District Court had denied plaintiffs the right to depose defendants' officers to establish standing and subject matter jurisdiction in federal court. The discovery sought went to "the heart of the controversy, for on it turns plaintiffs-petitioners' right to be in court," 459 F.2d at 707; therefore, the District Court's order "creat[ed] the exceptional circumstances necessary to support the extraordinary writ of mandamus," *id.* at 708.[1]

---

1. The Government's reliance on *United States v. United States District Court,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), is unavailing. Although the Sixth Circuit had granted manda-

mus, the Supreme Court noted that it was not presented with any challenge to the appropriateness of the mandamus procedure. *See id.* at 301 n.3, 92 S.Ct. at 2129 n.3. Moreover, the

Arguably more pertinent, but not controlling, is the *Socialist Workers Party* litigation, *In re Attorney General, supra.* In that case, the District Court held the Attorney General in contempt for refusing to release documents that contained the names of allegedly confidential informants. In concluding that this case was one of extraordinary significance justifying the granting of mandamus, we pointed to three factors. First, this was the first case in which a political party had sued the Government for damages and injunctive relief for allegedly illegal surveillance. Second, the Attorney General, whose claim of privilege covered an unprecedented number of informants (over 1,300), contended that failure to uphold the privilege would undermine the entire law enforcement and intelligence-gathering activities of the United States. Finally, the fact that the Attorney General had been held in civil contempt contributed to the unusual importance of the case. 596 F.2d at 63–64.

 In contrast, the instant case presents none of these extraordinary factors. First, the Attorney General has not been held in contempt for failure to produce the Task Force Report. Second, despite the Government's claim that the issue whether the Government waives its executive privilege in underlying documents once it releases to the public a summary of those documents is one of first impression, this case really presents only a variation of the much litigated question of whether, and what kind of, publication waives a privilege.[2] *Cf. Schlagenhauf v. Holder, supra,* 379 U.S. at 110, 85 S.Ct. at 238 (order requiring petitioner-defendant's examination "appears to be the first of its kind in any reported decision in the federal courts under Rule 35"; the Court "found only one such modern case in the state courts"). We reject the implication underlying the Government's argument—that whenever a district court rejects a Government claim of privilege, the Government should be entitled to an interlocutory test of the ruling by a petition for mandamus. Finally, the Government cannot complain that the District Court's order constituted a "usurpation of power"; a district court clearly has the power to determine whether a waiver of privilege has occurred and to grant a motion to compel discovery. *See* Fed.R.Civ.P. 37(a).

Accordingly, the appeal is dismissed and the petition for a writ of mandamus is denied.

---

Sixth Circuit, in granting mandamus, had described the case as an extraordinary one "in all respects." 444 F.2d 651, 655 (6th Cir. 1971), *aff'd on other grounds,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972).

**2.** In finding a waiver, the District Court relied on both the extent of the information the Government had publicly disclosed and the potentially misleading nature of the disclosure compared to what was withheld. 514 F.Supp. at 212–13. We express no view on the merits of the waiver ruling.