**UNITED STATES of America,**

v.

**James COONAN, a/k/a "Jimmy," Kevin Kelly, James McElroy, a/k/a "Jimmy Mack," William Bokum, Kenneth Shannon, John Halo, Edna Coonan, a/k/a "Julia Coonan," Richard Ritter, a/k/a "Muggsy," Thomas Collins, and Florence Collins, Defendants.**

**In re UNITED STATES of America, Petitioner.**

**No. 898, Docket 88–3007.**

United States Court of Appeals, Second Circuit.

Argued Feb. 5, 1988.

Decided Feb. 5, 1988.

Opinions Feb. 11, 1988.

Aaron R. Marcu, Asst. U.S. Atty., S.D. N.Y., New York City, (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., New York City, Mary Lee Warren, David Brodsky, Asst. U.S. Attys., of counsel), for petitioner.

Vivian Shevitz, New York City (Gerald L. Shargel, Georgia J. Hinde, New York City, Frank A. Lopez, Sercarz, Schechter & Lopez, Brooklyn, N.Y., Fern H. Shwaber, Alfred M. Christiansen, Robert Blossner, Lawrence H. Schoenbach, Ronald L. Garnett, Wiggins, Holt & Garnett, New York City, of counsel), for defendants James Coonan, Edna Coonan, James McElroy, William Bokum, John Halo, Richard Ritter and Thomas Collins.

Henriette D. Hoffman, New York City (Colleen P. Cassidy, Federal Defender Services Unit, The Legal Aid Society, New York City, of counsel), for defendant Florence Collins.

Before TIMBERS, WINTER and ALTIMARI, Circuit Judges.

WINTER, Circuit Judge:

This petition for a writ of mandamus involves an ongoing criminal RICO trial before Judge Knapp and arises because of the government's insistence that the jury, before determining guilt as to individual predicate acts, be informed that two such acts are necessary to sustain a RICO conviction. We denied the petition shortly after oral argument on February 5, 1988; this opinion sets out our reasons.

## BACKGROUND

The fifteen-count indictment, Indictment S 87 Cr. 249 (WK), was filed on September 17, 1987 and charged ten defendants with having committed various crimes in connection with their alleged membership in "the Westies," a group hailing from the Hell's Kitchen neighborhood on the West Side of Manhattan. The first two counts of the indictment charged all ten defendants with participating in and with conspiring to participate in a racketeering enterprise, namely the Westies, in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and (d) (1982). The RICO counts detailed thirty-two predicate acts of racketeering activity, including eight murders, three attempted murders, five conspiracies to commit murder, four kidnappings, and various acts of loansharking, extortion, narcotics trafficking, illegal gambling, mail fraud and counterfeiting. Trial of eight of the defendants (the other two being fugitives) began on October 5, 1987, and continues to this day. The government completed its case on January 14, 1988, the defense case began on January 19, and summations were scheduled for the week of February 8. The district court is expected to charge the jury at the end of the week.

On January 22 and 26 Judge Knapp distributed drafts of his proposed charge. The proposed instructions on Counts One and Two define a RICO enterprise, membership in the enterprise, and the jurisdictional requirement that the enterprise have an effect on interstate commerce. The proposed charge also would instruct the jury about the twenty-eight predicate acts that have not been either dismissed or otherwise redacted,[1] about the parties' contentions regarding those acts, and about the requirement that an act be "related to the enterprise." Proposed Charge (Second Draft) at 7; *see Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 51 (2d Cir.1987), *cert. denied*, ⸺ U.S. ⸺, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *United States v.*

---

1. Three predicate acts were dismissed at the close of the government's case and were accordingly redacted; one other predicate act was redacted because it named only the fugitive defendants, Kevin Kelly and Kenneth Shannon.

*Ianniello*, 808 F.2d 184, 189–93 (2d Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987). Notable by its omission, however, is any proposed instruction requiring the jury to make any finding as to whether the defendants participated in the affairs of a racketeering enterprise through a pattern of racketeering activity.

The district court's proposed charge thus does not ask the jury to render a general verdict on Counts One and Two. Instead, the jury is simply required to find, through special verdicts, whether the government has proven the existence of the enterprise, and, with respect to each defendant, whether the government has proven membership in the enterprise and guilt as to individual predicate acts beyond a reasonable doubt. Upon receipt of these special verdicts, Judge Knapp proposes to extrapolate each defendant's guilt on the RICO counts mechanically from the jury's findings. For example, if the jury finds both the existence of an enterprise and the defendants' membership therein, Judge Knapp would determine guilt or innocence on Counts One and Two merely by counting the number of predicate acts found by the jury to have been committed by each defendant. The requisite number for conviction, of course, is two. *See United States v. Benevento*, 836 F.2d 60, 72 (2d Cir.1987); *Ianniello*, 808 F.2d at 189–93; 18 U.S.C. § 1961(5) (1982).

Judge Knapp explained his proposed charge as follows:

> In the first place, unless, as I said earlier, the defendants agree to this method, it's all over; if the government doesn't agree to it, they can try to persuade me to change it, but if the defendants don't agree that's the end of the matter, because I have adopted this method because I think it is beneficial to defendants, and it would be clearly improper if they object.
>
> \* \* \* \* \* \*
>
> I believe a pattern of racketeering is established on two racketeering acts and they have to be related in some way. The jury is not asked to find out whether there is a pattern of racketeering.

> Usually in these charges they say you have got to find a pattern of racketeering, give a lot of vague language and if the jury wants to find a verdict, it does, and the appellate courts say, a pattern of racketeering, that's what the judge said and that's what you are entitled to, and if you object and if the government persuades me that I should do it anyway, that's what I will do; if you don't object, I will do it automatically.
>
> What I am trying to work out is a Charge which merely asks the jury to find specific things, and those findings should be able to mathematically tell us whether the RICO statute has been violated or not.
>
> For example, I don't tell them they have to find two RICO counts as to each defendant. I just tell them what they have to do as to each RICO count, find whether it was established or not. We can easily look at the things and find out what if they found 2.
>
> What is my theory in that? My theory is if they have to look at each count and decide whether or not that count, racketeering act, has been established, they will look at that act. If they are told they've got to have 2 to find a defendant guilty, they may go back and say, gee, if we need 2, we better be careful not to acquit, and I don't see why the government should have that benefit.

The defendants consented to the district court's instructions and its use of special verdicts. The government, however, objected vigorously, arguing that the district court was obligated to instruct the jury on the requirement of finding a "pattern of racketeering activity." The government also made a request, which was denied on January 26, that the jury be required to return a general verdict. On January 27, the government sought, and the district court denied, reconsideration of the court's ruling.

On Monday, February 1, the government filed the instant petition for a writ of mandamus pursuant to 28 U.S.C. § 1651 (1982) and Fed.R.App.P. 21. Because of the imminence of closing arguments and jury de-

liberations in the trial below, we scheduled oral argument for Friday, February 5. We denied the petition by order shortly after argument.

## DISCUSSION

It is settled, of course, that "[m]andamus is an extraordinary remedy, the 'touchstones' of which are 'usurpation of power, clear abuse of discretion and the presence of an issue of first impression.'" *In re United States*, 680 F.2d 9, 12 (2d Cir.1982) (quoting *American Express Warehousing, Ltd. v. Transamerica Ins. Co.*, 380 F.2d 277, 283 (2d Cir.1967); *see also In re Weisman*, 835 F.2d 23, 27 (2d Cir.1987); *In re IBM Corp.*, 687 F.2d 591, 599 (2d Cir.1982). "An appellate court should not issue mandamus to correct even gross error, but should issue the writ when necessary 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir.1987) (citation omitted) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)). The government, protesting what it believes to be an "egregious usurpation of power" by Judge Knapp, Gov't Br. at 31, asserts that mandamus should issue here because its petition "raises significant questions of the proper exercise of judicial power and the administration of criminal justice in the federal courts that would evade review if not considered at this time." *Id.* (quoting *United States v. Werker*, 535 F.2d 198, 200 (2d Cir.), *cert. denied*, 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976)).

The government asserts that Judge Knapp's proposed charge constitutes an extraordinary usurpation of power for two reasons. First, the government contends that Judge Knapp proposes to deprive it of its right to a general verdict on a defendant's guilt or innocence. Second, the government contends that the charge infringes upon its jury-trial rights by failing to instruct the jury on the existence of a "pattern of racketeering activity," an essential element of the RICO charges.

■ We do not believe the government's chracterization of the issues is entirely accurate. At oral argument, we asked the government whether it would have any objection to the use of a procedure that would separate the jury's deliberations on the commission of predicate acts from its deliberations on the general RICO counts. Under the method suggested, the jury would answer special interrogatories[2] as to the predicate acts committed by each defendant before being told how many such acts were necessary to a RICO conviction. The jury would then be instructed as to the definition of a RICO pattern[3] and the exist-

---

**2.** As Judge Newman explained in his separate opinion in *United States v. Ruggiero*, 726 F.2d 913, 926 n. 1 (2d Cir.) (Newman, J., concurring in part and dissenting in part), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984), [t]hough the term "special verdict" is sometimes used as the equivalent of a jury interrogatory, "special verdicts," as contemplated by Fed.R.Civ.P. 49(a), are used to elicit precise findings by the jury in the absence of a general verdict, and "interrogatories," contemplated by Fed.R.Civ.P. 49(b), are used in conjunction with a general verdict.

*See also United States v. Pforzheimer*, 826 F.2d 200, 205 n. 1 (2d Cir.1987).

**3.** We do not believe, as the government contends, that Judge Knapp's proposed instructions in fact relieve the jury of the task of determining the existence of a pattern of racketeering activity. Although the "route" we have taken in defining the requisite "continuity plus relationship" among RICO predicates after *Sedima, S.P.*

*R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), "may not have been the clearest and most predictable," *Creative Bath Prods., Inc. v. Connecticut Gen. Life Ins. Co.*, 837 F.2d 561, 564 (2d Cir.1988), we have decided at least one thing with certainty: Two racketeering acts, if committed in furtherance of the affairs of an enterprise, suffice without more to constitute a pattern. *See id.* at 564; *Benevento*, 836 F.2d at 72; *Beck*, 820 F.2d at 51; *Ianniello*, 808 F.2d 189–91; *see also United States v. Weisman*, 624 F.2d 1118, 1122 (2d Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980). Accordingly, while Judge Knapp's proposed charge does not either refer to "patterns" or require the jury to count the number of predicate acts proven against each defendant, the charge would not remove any actual factfinding from the province of the jury.

Cases such as *United States v. Natale*, 526 F.2d 1160, 1167 (2d Cir.1975), *cert. denied*, 425 U.S.

ence of an enterprise and would be asked to return general verdicts of guilty or not guilty on the RICO counts. The defendants agreed to such a procedure at oral argument, and presumably the district court would utilize it if so asked by the government. However, the government stated that its objections to Judge Knapp's procedure were applicable to our suggestion as well because the special interrogatories would cause the jury to view the predicate acts in an unconnected fashion.

In view of the fact that our suggestion would cure the claimed defects in Judge Knapp's method by both affording a general verdict by the jury of guilty or not guilty and including the usual charge on the "pattern" element, we understand the government to be complaining only that the jury may not under any procedure deliberate on the predicate acts without being told that two such acts are necessary to sustain a RICO conviction. In other words, what the government seeks to protect is the possibility of its obtaining guilty verdicts through prejudicial spillover from the numerous violent and otherwise criminal acts before it. When examined in this light, the government's position is not simply that it is entitled to a general verdict but that it has a right, enforceable by mandamus, to prevent any and all use of special interrogatories separately from a general verdict no matter how necessary they may be to the protection of a defendant's rights.

The government argues that it possesses a right to a jury trial that is coextensive with the corresponding right possessed by a criminal defendant. That position, however, defies both history and logic. For example, Fed.R.Crim.P. 29 specifically allows a district court in a jury trial to "order the entry of [a] judgment of acquittal ... if the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a); *see id.* 29(c). But the trial court, of course, is not empowered to enter a judgment of conviction. As the Supreme Court has explained,

in a jury trial the primary finders of fact are the jurors. Their overriding responsibility is to stand between the accused and a potentially arbitrary or abusive Government that is in command of the criminal sanction. For this reason, a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict, see *Sparf & Hansen v. United States,* 156 U.S. 51, 105 [15 S.Ct. 273, 294, 39 L.Ed. 343] (1895); *Carpenters v. United States,* 330 U.S. 395, 408 [67 S.Ct. 775, 782, 91 L.Ed. 973] (1947), regardless of how overwhelmingly the evidence may point in that direction. The trial judge is thereby barred from attempting to override or interfere with the jurors' independent judgment in a manner contrary to the interests of the accused.

Such a limitation on the role of a trial judge, however, has never inhibited his ruling in favor of a criminal defendant. *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977). Thus, although the government has the right to

---

950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976), and *United States v. Howard,* 506 F.2d 1131, 1133 (2d Cir.1974), upon which the government relies, are simply inapposite. Those cases suggest only that plain error may arise when the trial court has *itself* determined the existence of an element of an offense and has accordingly left mention of that element out of the jury charge. Omission of such an element may constitute "reversible error even where the element[ ] not charged ha[s] been wholly uncontested by the defendant." *Natale,* 526 F.2d at 1167. Moreover, it is not at all clear that the government would have standing to raise this principle.

Equally misplaced is the government's reliance upon *United States v. Williams,* 612 F.2d 735, 740 (3d Cir.1979), *cert. denied,* 445 U.S. 934, 100 S.Ct. 1328, 63 L.Ed.2d 770 (1980). In that case, the Third Circuit held that the government was not required to join in the defendant's proffered stipulation as to the existence of an element of the offense with which he was charged; the court explained that "[t]he Government was not required to accept a judicial admission ... of the defendant but had a right to proffer proof on the point admitted," *id.* (quoting *United States v. Brickey,* 426 F.2d 680, 686 (8th Cir. 1970), *cert. denied,* 400 U.S. 828, 91 S.Ct. 55, 27 L.Ed.2d 57), and indeed went so far as to suggest that the defendant's stipulation would effectively "modify a criminal statute enacted by Congress by eliminating ... one of the elements of the crime." *Id.* In contrast, the procedure proposed by the district court in the instant case in no way limits the scope of the government's proof.

insist on a trial by jury, see, e.g., Singer v. United States, 380 U.S. 24, 36–37, 85 S.Ct. 783, 790–91, 13 L.Ed.2d 630 (1965); Patton v. United States, 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930); United States v. Moon, 718 F.2d 1210, 1217–18 (2d Cir.1983), cert. denied, 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984), the right to a jury trial remains "principally for the benefit of the accused." Singer, 380 U.S. at 33, 85 S.Ct. at 789 (citing Patton, 281 U.S. at 312, 50 S.Ct. at 263). Even if the government is entitled to symbolic benefits flowing from a jury declaring guilt or innocence, that interest is in no way inconsistent with the use of special interrogatories regarding discrete issues to avoid prejudicial spillover.

Moreover, the criminal law's historical preference for general verdicts, much like its traditional distaste for special interrogatories, stems from the unique rights of the criminal defendant. As Judge Newman has observed with respect to special interrogatories:

> Various considerations underlie the opposition to jury interrogatories in criminal cases. There is apprehension that eliciting "yes" or "no" answers to questions concerning the elements of an offense may propel a jury toward a logical conclusion of guilt, whereas a more generalized assessment might have yielded an acquittal. The possibility also exists that fragmenting a single count into the various ways an offense may be committed affords a divided jury an opportunity to resolve its differences to the defendant's disadvantage by saying "yes" to some means and "no" to others, although unified consideration of the count might have produced an acquittal or at least a hung jury.... In general, those opposing interrogatories fear that any particularization of the jury's decision-making will risk interference with the jury's romantic power of nullification, or as Learned Hand felicitously phrased it, "tempering [the law's] rigor by the mollifying influence of current ethical conventions." United States ex rel. McCann v. Adams, 126 F.2d 774, 776 (2d Cir.), rev'd on other grounds, 317 U.S. 269 [63 S.Ct.

236, 87 L.Ed. 268] (1942). Though courts refuse to inform a jury of this prerogative, United States v. Dougherty, 473 F.2d 1113, 1130–37 (D.C.Cir.1972); United States v. Boardman, 419 F.2d 110, 116 (1st Cir.1969), cert. denied, 397 U.S. 991 [90 S.Ct. 1124, 25 L.Ed.2d 398] (1970), some condemn interrogatories because they may impair an opportunity the jury is not told it has. See United States v. Spock, 416 F.2d [165,] 182 [ (1st Cir.1969) ].

Ruggiero, 726 F.2d 913, 927 (2d Cir.) (Newman, J., concurring in part and dissenting in part) (footnote and citations omitted), cert. denied, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). The government clearly cannot point to any comparable considerations in support of its asserted right to prevent the use of special interrogatories as a means of preventing prejudicial spillover. The government can hardly argue, for instance, that the use of special interrogatories would in any way impair the "legitimate interest" of the "[g]overnment, as a litigant," in obtaining a trial "before the tribunal which the Constitution regards as most likely to produce a fair result." Singer, 380 U.S. at 36, 85 S.Ct. at 790. We note as well that it is not clear that even a defendant has the absolute right to prevent any and all use of special interrogatories. See Ruggiero, 726 F.2d at 925–28 (opinion of Newman, J.). Most importantly, however, the government, unlike a defendant, may not rightfully seek the benefit of an irrational verdict; although juries may freely temper the rigor of the law, they surely may not enhance it. Again, we emphasize that the government at oral argument rejected any use of special interrogatories to prevent spillover whether or not followed by a full charge on each element and by a general verdict.

█ Because it is thus clear that the government's objection to Judge Knapp's suggested procedure is based solely on its view that the jury should know how many predicate acts are necessary for a RICO conviction before considering those acts, we cannot say that Judge Knapp so abused his discretion as to warrant relief by man-

damus. The petition for a writ of mandamus is therefore denied.

ALTIMARI, Circuit Judge, dissenting:

Were I to accept the majority's imaginative framing of the issues on this appeal, I might be inclined to concur. The majority starts from the premise that "what the government seeks to protect [in this mandamus proceeding] is the possibility of its obtaining guilty verdicts through prejudicial spillover from the numerous violent and otherwise criminal acts before it." Maj. op. at 890. Reasoning from this premise, the majority concludes that the government has no such right to "seek the benefit of an irrational verdict." *Id.* at 891. Who can argue with this self-evident proposition? In fact, however, what concerns the government is not an "irrational verdict," but an uninformed one. Because I think the proposed instructions would produce such a verdict, I must dissent.

Moreover, the majority opinion fails to address the issues actually presented in the mandamus proceeding, preferring to review the legal sufficiency of a position taken by the government in response to a hypothetical question posed by a member of this panel. The government's response to a hypothetical question *is not*, however, properly before us. Mandamus review should be limited to the actions or proposed actions of the district court in the context of the instant case. We should not engage in academic speculation and issue what amounts to an advisory opinion.

In addition, despite the majority's suggestion to the contrary, nowhere has the government argued in this appeal that it is seeking to protect some vague "right" to an "irrational verdict." *But cf.* maj. op. at 891. Indeed, the majority's argument on this point is nothing more than a straw man, set up solely for the purpose of knocking it down. More importantly is the fact that, had the government maintained such a position, it would be inconsistent with the United States Attorney's proper role when serving as prosecutor in a criminal proceeding:

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and *whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.* He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. *It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.*

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935) (emphasis added). The majority should not ascribe to the government such an improper motive for its actions in seeking relief here, especially when the allegedly improper motivations would so clearly be at odds with the government's duty to see that "justice shall be done." Nor should the majority assume or accuse the government of acting for some ulterior or "ignoble purpose." *Singer v. United States*, 380 U.S. 24, 37, 85 S.Ct. 783, 791, 13 L.Ed.2d 630 (1965). I question whether the "servant of the law" would pursue this extraordinary remedy except in pursuit of the interests of justice.

After a review of the record, and notwithstanding the majority's extrapolations, the government's position is clear. The government argues, first, that the district court improperly refused to instruct the jury on an essential element of the RICO offenses, the "pattern" requirement; and second, that the district court's proposed conduct—in receiving the special interrogatories and then pronouncing *its* general verdict as to each defendant's guilt or innocence in light of some "mathematical" calculation—would usurp the jury's historic function of rendering general verdicts and thus would deny the government its right to a final determination by the twelve men and women who served as jurors in this

case. Having confined my review only to those issues briefed and argued here, I conclude that the district court's proposed actions clearly would constitute a gross usurpation of the jury's historic function and I would issue the writ.

### Background

On January 22 and 26, 1988, as the evidentiary phase of this case was approaching conclusion, the district court distributed to counsel its proposed jury instructions ("proposed instructions"). With respect to counts three through fourteen of the indictment as redacted, the district court's proposed instructions set forth the various elements of the substantive offenses charged and then asks the jury to return a general verdict for each defendant charged in those counts. For example, the instructions on count fourteen of the indictment, the tax evasion count, first sets out the elements of the crime that:

Count 14 charges James and Edna Coonan with evading income taxes for the calendar year 1980. In order to find a defendant guilty on Count 14, the government must prove beyond a reasonable doubt that the defendant you are considering owed substantially more federal income tax for the calendar year 1980 than was declared on his tax return, and that the defendant wilfully and knowingly filed a false tax return with the intention of defrauding the government of taxes owed.... The first thing that the government must establish beyond a reasonable doubt is that William Beattie made loansharking payments to Edna Coonan during 1980.... If so, the second question you must consider is whether the government has proved beyond a reasonable doubt that the defendant you are considering knew that more income tax was owed than was declared. Finally, the government must prove beyond a reasonable doubt that the defendant you are considering filed a false return with the knowing and wilful purpose of keeping from the government a tax which the defendant knew it was his or her legal obligation to pay.

Proposed instructions at 54–55. After explaining these elements, the charge outlines the defendants' defenses and contentions and then requires the jury to render a general verdict of guilt or innocence:

In summary, the questions you must answer as to each defendant with respect to Count 14 are: 1. Has the government proven beyond a reasonable doubt that the Coonans had substantial unreported income in the form of loansharking payments during 1980? 2. If so, has the government proven beyond a reasonable doubt that the defendant you are considering failed to report that income on his 1980 tax return, with the knowing and wilful purpose of avoiding a tax which the defendant knew he had a legal duty to pay? *As to a particular defendant, if your answer to both of these questions is yes, you may find that defendant guilty on Count 14. If you have a reasonable doubt as to the answer to either question, you must find the defendant not guilty.*

*Id.* at 56–57 (emphasis added).

In stark contrast to the proposed instructions on counts three through fourteen, the proposed instructions on the racketeering ("RICO") offenses contained in counts one and two *neither set forth all the essential elements of the offenses charged, nor call for the jury to render a general verdict on those counts.*

The proposed RICO instructions begin by identifying the defendants charged and setting forth the statutory provisions allegedly violated. The proposed instructions also charge the jury on the "enterprise" element, 18 U.S.C. § 1961(4), the jurisdictional requirement, i.e., that the actions of the enterprise must affect interstate commerce, 18 U.S.C. § 1962(c), and the requisite association of the defendants charged with the enterprise. *Id.* The proposed instructions then require the jury to determine whether each of the twenty-eight acts of racketeering charged in the redacted indictment has been proven, and whether these acts were committed in furtherance of the enterprise. The proposed instruc-

tions do set forth the specific elements of each of the charged acts of racketeering.

Up to this point, and without passing on the merits of the various instructions, the instructions appear complete and consistent with this circuit's precedent. *See United States v. Benevento*, 836 F.2d 60, 72–73 (2d Cir.1987); *United States v. Ianniello*, 808 F.2d 184, 189–93 (2d Cir.1986), *cert. denied*, ─── U.S. ───, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987).

But nowhere does the court instruct the jury that it must find defendants to have engaged in a "pattern of racketeering activity," to support a guilty verdict. *See* 18 U.S.C. § 1962(c). Certainly instruction on this element should be a relatively simple task in light of the statute's plain definition of the "pattern" element, *see* 18 U.S.C. § 1961(5), and this circuit's established case law. *See, e.g., Benevento*, 836 F.2d at 72 ("To satisfy the pattern requirement in a RICO prosecution, the government must prove that the defendant committed at least two of the predicate acts listed in [18 U.S.C. §] 1961(1) within ten years of each other."). Furthermore, the proposed instructions do not require the jury to render a general verdict of guilt or innocence for each defendant on the racketeering counts.

The government immediately brought these deficiencies to the district court's attention. The district court acknowledged the omissions and offered the following justification:

> My general theory is that this [RICO] law is so expansive that the defendants, in the statement of the legal principle, should have it stated in a way that's most amenable to their arguments.
>
> \*　\*　\*　\*　\*　\*
>
> Also, the RICO statute, no one knows exactly what it means, at least the Supreme Court doesn't, and the circuits don't agree as to what the Supreme Court thinks, and I have never heard of a RICO case being reversed, and the reason is the judge always charges vague principles and the court of appeals always finds something in the record to support those vague principles.

> [In the proposed instructions,] I have tried to isolate out what facts have to be found to support what I conceive is the correct meaning of RICO, and, therefore, for example, *I don't invite the jury to find whether or not there is a pattern of racketeering.*
>
> I believe a pattern of racketeering is established on two racketeering acts and they have to be related in some way. *The jury is not asked to find out whether there is a pattern of racketeering.* Usually in these Charges they say you have got to find a pattern of racketeering, give a lot of vague language and if the jury wants to find a verdict, it does, and the appellate courts say, a pattern of racketeering, that's what the judge said and that's what you are entitled to, and if you object and if the government persuades me that I should do it anyway, that's what I will do; if you don't object, I will do it automatically.
>
> *What I am trying to work out is a Charge which merely asks the jury to find specific things, and those findings should be able to mathematically tell us whether the RICO statute has been violated or not.*
>
> For example, *I don't tell them they have to find two RICO counts as to each defendant.* I just tell them what they have to do as to each RICO count, find whether it was established or not. We can easily look at the things and find out what if they found 2.
>
> What is my theory in that? My theory is if they have to look at each count and decide whether or not that count, racketeering act, has been established, they will look at that act. *If they are told they've got to have 2 to find a defendant guilty, they may go back and say, gee, if we need 2, we better be careful not to acquit, and I don't see why the government should have that benefit.*
>
> All they have to do is, each act is found, either found or not found, as to an individual defendant. If one act is clear and they are kind of fuzzy on the other, in that situation the jury should find the fuzzy one not proven.

*If the jury is told that finding that fuzzy one not proven will release that defendant, they may go back and think it over, which I don't think they should.*[1]

Transcripts of proceedings, Jan. 22, 1988 at 8091–94 (emphasis added).

Upon the district court's refusal to amend its proposed instructions to include an instruction on the pattern element, in lieu of a "mathematical" computation that would then be translated by the court into a judgment of conviction or acquittal for each defendant, the government filed the instant petition. The government seeks from this court an order

> directing the Honorable Whitman Knapp, United States District Judge for the Southern District of New York, (1) to permit the jury which is sitting in the trial of *United States v. James Coonan, et al.,* S 87 Cr. 249 (WK), to return a general verdict of guilty or not guilty on the racketeering counts in that Indictment and (2) to charge the jury on all of the essential elements of those offenses[.]

Petition for writ of mandamus at 1–2. Notwithstanding the majority's contentions, nowhere in the petition does the government seek relief from the district court's decision to employ special interrogatories. Rather, the government seeks to have these special interrogatories *supplemented* by a concurrent general verdict that is reached with full understanding of the elements of the offenses charges. *See* Affidavit of Rudolph W. Giuliani at 10.

### Discussion

At the outset, it is important to dispel the misconception that the majority has concerning the proper issues on this appeal. The majority correctly observes that 1) the proposed instructions do not require the jury "to make any finding as to whether the defendants participated in the affairs of a racketeering enterprise through a pattern of racketeering activity," maj. op. at

888, and 2) "[t]he district court's proposed charge ... does not ask the jury to render a general verdict on Counts One and Two. Instead, the jury is simply required to find, through special verdicts, whether the government has proven the existence of the enterprise, and, with respect to each defendant, whether the government has proven membership in the enterprise and guilt as to individual predicate acts beyond a reasonable doubt. Upon receipt of these special verdicts, Judge Knapp proposes to extrapolate each defendant's guilt on the RICO counts mechanically from the jury's findings." *Id.* Although the majority seems to recognize that the district court's proposed charge and special interrogatory procedure may suffer from some defects, *see* maj. op. at 890, it nevertheless is content to allow the district court to proceed. The majority apparently *assumes* that the district court will adopt its suggestion that the jury be allowed to return a general verdict after it has reached a special verdict. *Id.* at 890. The majority is also satisfied that the remaining issue concerning the district court's failure to instruct the jury concurrently on the pattern element when it instructs on the other elements of the RICO offenses does not rise to such a level to merit review on a mandamus petition. *Id.* at 891.

It is common knowledge that, as appellate judges, we should never *assume* anything. Absent the issuance of a writ, the district court is entitled to proceed with its proposed instructions and special interrogatory procedure, despite its obvious flaws. Our review here must therefore be confined to analyzing the propriety of the district court's proposed actions, which, upon close analysis, cannot be allowed.

### A. *Appropriateness of mandamus relief.*

Of course, "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. United States District Court,* 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976). Tradi-

---

**1.** As discussed in greater detail below, I find it inconsistent with the revered traditions of the jury system that instructions should be designed deliberately to prevent jurors from appreciating the import of their actions.

tionally, the writ has been used in the federal courts only "to confine an inferior court to a lawful exercise of its prescribed jurisdiction[,]" *Id.* (quoting *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967)), provided that the lower court's actions are tantamount to an "usurpation of power." *Kerr*, 426 U.S. at 402, 96 S.Ct. at 2124.

It is established in this circuit that, notwithstanding the limited situations in which mandamus may issue, it nevertheless is an appropriate method of review where

> [t]he petition raises significant questions of the proper exercise of judicial power *and* the administration of criminal justice in the federal courts that would evade review if not considered [through review of the petition's merits.]

*United States v. Werker*, 535 F.2d 198, 200 (2d Cir.), *cert. denied*, 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976) (footnote omitted) (emphasis added). Although mandamus may not be used by the government "to circumvent the limitations of the Criminal Appeals Act[, 18 U.S.C. § 3731,]" *United States v. Weinstein*, 452 F.2d 704, 712 (2d Cir.1971), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972) (citation omitted), a writ may properly issue to prevent a district court from taking action that is "beyond the judge's power and inconsistent with 'accepted principles and usages of law.'" *Id.* at 713.

Applying the *Werker* test, I conclude that this is an appropriate case for mandamus. Certainly the district court's proposed usurpation of the jury's role poses a "significant question of the proper exercise of judicial power." Indeed, nowhere in the Federal Rules of Criminal Procedure is the district court granted this authority, and, as discussed below, it seems quite clear that such actions are contrary to long standing principles of law. Similarly, the district court's refusal to instruct the jury on an essential element of the RICO offenses concurrent with its instructions on the other elements constitutes the type of abuse of judicial power that mandamus exists to correct.

The second prong of *Werker* is also satisfied. The district court's action here will evade review completely. Because the defendants have each consented to the procedures at issue, they cannot raise objections on direct appeal. And certainly, the government has no other avenue to obtain review of these actions. *See* 18 U.S.C. § 3731 (confining government to certain matters that may properly be the subject of a direct appeal). Because the *Werker* standard is satisfied here and because the district court's proposed actions, if allowed, would constitute a gross usurpation of the jury function, I conclude that this is an appropriate case for mandamus.

**B.** *Propriety of the district court's proposed actions.*

1. Necessity for a General Verdict.

The hallmark of a trial by jury in a federal criminal case is that, when that body of twelve citizens speak, they do so with a single voice which reflects a considered judgment arrived at only after examination of conflicting evidence, debate as to proper inferences to be drawn therefrom and thoughtful applications of the relevant principles of law to the facts of the case. The public listens with rapt attention to the words of the jury in pronouncing guilt or innocence, for in that singular moment is being expressed the convictions and conscience of the entire community.

For these reasons and more, we should not quickly dismiss any encroachment into the rarely-challenged domain of the jury. The traditional function of the jury has been, after all, to hear evidence, to receive instruction as to principles of law applicable to the charges brought, and then to retire to its sanctuary—the "jury room"—without public scrutiny or legal intervention to determine guilt or innocence. Only after the jury concludes its evaluation of the facts in light of the law as instructed, does it report in open court a general verdict of "guilty" or "not guilty." As Lord Mansfield stated

> "a Jury, by means of a general verdict *are entrusted with a power of blending law and fact*, and of following the preju-

dices of their affections or passions. It is the duty (says he) of the Judge, in all cases of general justice, to tell the jury how to do right, though they have it in their power to do wrong, which is a matter entirely between God and their own consciences."—Argument in the Dean of St. Asaph's Case.

*Morris v. United States,* 156 F.2d 525, 530 (9th Cir.1946) (quoting Phillips on Juries, p. 172) (emphasis added).

For a variety of reasons, the most important of which being the defendant's right to a fair trial, the power of the jury to render general verdicts in criminal cases has been carefully guarded, admitting exception only in limited circumstances. *See United States v. Pforzheimer,* 826 F.2d 200, 205–06 (2d Cir.1987); *United States v. Ruggiero,* 726 F.2d 913, 922–23, 925–28 (2d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984); *United States v. Stassi,* 544 F.2d 579, 583–84 (2d Cir.1976), *cert. denied,* 430 U.S. 907, 97 S.Ct. 1176, 51 L.Ed.2d 582 (1977). "There is an apprehension that eliciting 'yes' or 'no' answers to questions concerning the elements of an offense may propel a jury toward a logical conclusion of guilt, whereas a more generalized assessment might have yielded an acquittal." *Ruggiero,* 726 F.2d at 927 (opinion of Newman, J., concurring in part and dissenting in part); *accord United States v. Spock,* 416 F.2d 165, 182 (1st Cir.1969).

Separate and apart from these serious concerns for preserving the rights of accused, we preserve juries' power to render general verdicts for reasons that go to the heart of the Anglo/American concept of justice:

It is one of the most essential features of the right of trial by jury that no jury should be compelled to find any but a general verdict in criminal cases, and the removal of this safeguard would violate its design and destroy its spirit.

*Spock,* 416 F.2d at 181 (quoting G. Clementson, Special Verdicts and Special Findings by Juries, 49 (1905)). Indeed, Justices Black and Douglas went so far as to express reservations about the use of jury interrogatories, even in civil cases:

Such devices are used to impair or wholly take away the power of a jury to render a general verdict. One of the ancient, fundamental reasons for having general jury verdicts was to preserve the right of trial by jury as an indispensable part of a free government.

*Spock,* 416 F.2d at 181 & n. 40 (quoting Statement of Mr. Justice Black and Mr. Justice Douglas on the Rules of Civil Procedure and the Proposed Amendments, 31 F.R.D. 617, 618–19 (1963)).

From the above, it seems almost axiomatic that the district court's decision here to remove from the jury its power, right and duty to render a general verdict on counts one and two constitutes a clear usurpation of the jury function and a denial to the parties of their right to a jury trial as that has always been known. The district court made clear its intentions to predicate guilt or innocence on a "mathematical" computation whether two or more predicate acts were found for each defendant.

Although some might see the district court's proposed procedure as only slightly imperilling the right to a jury trial, in this context, I don't think we can speak of a partial deprivation. *Cf. Patton v. United States,* 281 U.S. 276, 290–92, 50 S.Ct. 253, 255–56, 74 L.Ed. 854 (1930) (partial waiver of right to a jury trial through accused's consent to a jury of eleven rather than twelve jurors represents complete deprivation of jury trial right). It is claimed that, because defendants have consented to the district court's proposed procedure, it should be allowed to proceed with its quasi-bench trial after it receives the jury's responses to the special interrogatories. But although defendants have an absolute right to trial by jury, they have no similar right to insist on a trial without a jury. *Singer v. United States,* 380 U.S. 24, 33–34, 85 S.Ct. 783, 789, 13 L.Ed.2d 630 (1965); *United States v. Moon,* 718 F.2d 1210, 1217 (2d Cir.1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984). It is well-established and codified in the Federal

Rules of Criminal Procedure that the government has the "right" to insist on a trial by jury. *Singer,* 380 U.S. at 36–38, 85 S.Ct. at 790–91; *Patton,* 281 U.S. at 312–13, 50 S.Ct. at 263; Fed.R.Crim.P. 23(b). In view of the government's adamant demand that, at the very least, the special interrogatories be supplemented with an instruction compelling the jury to render a general verdict, it is clear that the government is withholding its consent to this quasi-bench trial the district court proposes for the RICO counts. Because the district court has no discretion in this regard and must accede to the government's request that the case be resolved by the jury, *see* Fed.R.Crim.P. 23(b), I would not hesitate in granting the writ in the instant case and direct the district court to follow *Patton, Singer* and Fed.R.Crim.P. 23 and thus submit to the jury the question of guilt or innocence on the RICO counts concurrent with its submission of the special interrogatories.

The majority's arguments to the contrary misperceive the government's main contention on this appeal. The majority asserts that the government is only challenging the district court's use of special interrogatories. That is not accurate. For the sake of argument, I will accept the majority's assertion that the government does not have a right, coextensive with that of the accused, to prevent the use of special interrogatories. But, because the government does not ask that the district court be directed not to use special interrogatories, we need not resolve this question. The government only seeks to *supplement* those interrogatories with findings on a general verdict for the RICO counts. I might add that in each case cited by the majority for the proposition that the right, if any, to oppose the use of special interrogatories belongs to the accused, the special interrogatories used in those cases were *supplemented* with findings on a general verdict. *E.g., Pforzheimer,* 826 F.2d at 205; *Ruggiero,* 726 F.2d at 923.

Thus, I find that the majority's assertion that "[e]ven if the government is entitled to symbolic benefits flowing from a jury declaring guilt or innocence, that interest is in no way inconsistent with the use of special interrogatories regarding discrete issues to avoid prejudicial spillover," maj. op. at 891, is simply irrelevant to the questions properly before us. The majority opinion fails to address the government's primary reason for bringing this petition.

2. Instructions as to the Pattern Element.

Separate and apart from the district court's denial of the government's right to a general verdict is its failure to instruct the jury on all the essential elements of the offenses charged. The majority disposes of this issue in a footnote, stating "while Judge Knapp's proposed charge does not either refer to 'patterns' or require the jury to count the number of predicate acts proven against each defendant, the charge would not remove any actual factfinding from the province of the jury." Maj. op. at 889 n. 3. Once again, the majority does not glean the import of the government's concern. In the first place, as the majority apparently concedes, the jury must be instructed on the pattern element if it is to be permitted to render a general verdict. This is implicit from the majority's "suggestion" to the district court on the proper method to cure the government's "claimed defects." *Id.* at 890. Thus, the majority recognizes that it is error to allow the jury to render a general verdict when it has not been instructed on all the essential elements of an offense.

More importantly, the jury must be instructed on all the essential elements of an offense as it makes its findings on the various elements and that this fact-finding must be concurrent with the jury's determination of guilt or innocence. *See United States v. Natale,* 526 F.2d 1160, 1167 (2d Cir.1975), *cert. denied,* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976); *United States v. Montiell,* 526 F.2d 1008, 1010 (2d Cir.1975). Quite simply, it must be allowed to apply the law to the facts, not to have this done for them by someone else. A common sense rationale underlies this basic requirement: the jury must know each of the elements of the crime during its delib-

erations in order to avoid being forced to operate in the dark as to the consequences of their discrete determinations. *See United States v. Howard,* 506 F.2d 1131, 1133–34 (2d Cir.1974).

This general rule, which requires that the jury deliberate on the facts only after being informed of all the essential elements of an offense, comports with our ordinary understandings of the jury's deliberative process. Jurors are called upon to make a determination of whether the government either has or has not proven each and every element of a charged offense beyond a reasonable doubt. No one would dispute that, after a fair exchange of ideas, jurors can and often do disagaree as to whether a particular element of a charged offense has been proven. It is at this point of disagreement that jurors may recall the district court's often stated admonition which in essence provides:

> where there is controversy and disagreement each juror should not hesitate to reexamine their own views and change their opinion if they are convinced by the logic and reason of their fellow jurors; mindful, however, that they should not surrender their honest conviction as to the weight or effect of the evidence solely because of the strong opinion of their fellow jurors or for the purpose of returning a verdict.

It is fair to accept the fact that jurors for some two hundred years or more have followed this admonition over and over and over again. When jurors do decide that it is appropriate to yield to the more persuasive positions of their fellow jurors, they do so knowingly, intelligently and meaningfully because they understand the consequences of their acts to the ultimate issue that is before them, the guilt or innocence of an accused. By allowing themselves to be persuaded as to a particular fact, they do not simply provide a factor to be inserted in some equation. Rather, they allow themselves to be persuaded that a particular defendant is either guilty or not guilty of the crime charged.

Here, the district court, by refusing to give the jury a simple instruction on the RICO pattern element (and thus failing to set forth in its instructions all elements of the RICO offenses), will deny the jury its right to know and appreciate the consequences of their decisions on these charges. By having the jury proceed here in a vacuum, deliberately created without apprising the jury of the impact of its isolated decisions on the various elements, the district court abuses the function of the jury, relegating it to nothing more than an advisory body, employed not for the purpose of determining guilt or innocence, but for the sole purpose of assisting the district court in *its* determination of each defendant's guilt or innocence through its mathematical calculations. It is incomprehensible that the very same jury called upon to determine guilt or innocence on the other twelve counts in the indictment through the traditional method of instruction and general verdict, is somehow inadequate and unable to arrive at a just and fair verdict on the RICO counts.

The majority takes solace in the fact that the district court could correct its error in failing to instruct the jury on the pattern element by adopting the majority's suggested procedure of bifurcating the jury deliberations, and allowing the jury to first decide whether certain elements of the RICO offenses have been established, and then returning the case to the jury after being instructed on the pattern element in order for it to make a final determination of guilt or innocence. *See* maj. op. at 890. But unless the jury is allowed to consider all of the elements of the RICO offenses concurrently, the jury will be left in the dark during *its initial, most crucial deliberations,* and thus will not completely understand or appreciate the consequences of its determinations. We should never condone, nor encourage such a practice.

Should we permit this practice to occur or re-occur, I fear to imagine where it might lead. But, I have some concern for what will occur below when the district court proceeds as planned. To what extent are the summation remarks of both the government and the defendants to be restricted, curtailed and tailored in the instant case? Will there be additional time

allotted to all parties to address the pattern requirement as it relates to the remaining defendants in the event of acquittal mathematically determined by the court after the jury makes its initial findings? How will the court handle the government and the defendants' treatment of its many promises made to the jury during their opening statements as they relate to the pattern requirement? Will the jury be told that the court will recharge them after their initial findings and verdicts?

These are but a few of the many questions that come to mind when assessing the practical aspects of the district court's ill-conceived procedure. Whether the district court proceeds as originally intended or whether it accepts the majority's suggestions, I could not begin to spell out all of the possible ramifications. Suffice it to say that when in doubt, the district court should not proceed as planned or as suggested. Rather, the district court should follow the time-worn tradition of giving instructions on all of the elements of the offense and allow the jury to return its general verdict.

### Conclusion

For the foregoing reasons, I respectfully dissent.